**Reversed and Remanded and Opinion filed November 24, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00077-CV

**MKM ENGINEERS, INC., AND PIKA INTERNATIONAL, INC., Appellants**

**V.**

**JAL B. GUZDER, Appellee**

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 07-DCV-155803A**

## O P I N I O N

Appellee Jal B. Guzder sued appellants MKM Engineers, Inc. ("MKM") and PIKA International, Inc. ("PIKA"), seeking to enforce a Rule 11 agreement to settle pending litigation. Guzder moved for summary judgment on his breach of contract claim, and MKM and PIKA jointly filed a cross-motion for summary judgment contending that the Rule 11 agreement was unenforceable. The trial court granted a judgment in favor of Guzder. In six issues, MKM and PIKA contend that the trial court erred by granting Guzder's motion for summary

judgment and denying MKM and PIKA's cross-motion. We conclude that the agreement is enforceable, but fact issues concerning Guzder's performance under the Rule 11 agreement preclude summary judgment in his favor. We reverse and remand.

## FACTUAL BACKGROUND

MKM provides environmental remediation and disposal of unexploded munitions to government agencies. Its customers include the United States Army Corps of Engineers, the Department of Homeland Security, Defense Reutilization Marketing Services, and the Environmental Protection Agency. Khodi Irani is MKM's majority shareholder. MKM was a participant in the Small Business Administration's "Minority Set-aside Program," also referred to as the "8(a) program," which is designed to help small businesses obtain government contracts. Similar to MKM, PIKA is an environmental consultant and remediation firm whose primary customers are U.S. government agencies. PIKA also participated in the 8(a) program. Tirandaz Kasnavia is PIKA's owner and Irani's brother-in-law.

Guzder owns an environmental remediation consulting company named Energy & Environmental Technology Company ("EETCO"). Guzder and EETCO initially provided consulting services to MKM, but in 1999, Guzder became an officer, director, and 1% shareholder of MKM. In 2002, Guzder sued MKM, Irani, and others over his compensation and the case ultimately settled. The settlement documents provided that disputes over the agreement would be referred to arbitration before the American Arbitration Association ("AAA").

In 2005, Guzder sued MKM, Irani, PIKA, and Kasnavia in federal court, citing the qui tam provisions of the False Claims Act. *See* 31 U.S.C. § 3730(b) (the "Qui Tam Lawsuit"). Guzder alleged that MKM, Irani, PIKA, and Kasnavia fraudulently misrepresented their eligibility for the 8(a) program and submitted

2

inflated bid proposals to the government. The U.S. investigated the allegations and declined to intervene. On Rule 12(b)(6) grounds, the federal court dismissed several of the claims against MKM and Irani, and all of the claims against PIKA and Kasnavia. *See* Fed. R. Civ. P. 12(b)(6). Four claims against MKM and Irani remained pending.

In 2007, Guzder and EETCO filed the present lawsuit in the district court in Fort Bend County, contending that MKM and Irani breached the 2002 settlement documents (the "Fort Bend Lawsuit"). Guzder also sued Irani's wife, Parinaz Irani, PIKA, Kasnavia, and several members of Kasnavia's family. The trial court ordered Guzder's and EETCO's claims against MKM, Irani, and Parinaz to arbitration (the "AAA Arbitration") and stayed the lawsuit as to all other parties until the arbitration resolved. In March 2010, less than a month after the federal court had dismissed some of Guzder's claims against MKM and Irani in the Qui Tam Lawsuit, Guzder filed another suit related to the 2002 settlement agreement against MKM's former auditor, Suhrid Thakore. Although not parties to that lawsuit, MKM, the Iranis, PIKA, and its employees were served with discovery requests as third-party witnesses.

In an attempt to resolve the pending disputes, the parties engaged in mediation and settlement conferences. On May 27, 2011, counsel for MKM and Irani drafted a letter on their law firm's letterhead to "memorialize the terms of the proposed settlement agreement pursuant to Tex. R. Civ. P. 11." (the "Rule 11 Agreement"). Under the Rule 11 Agreement, MKM and PIKA together agreed to pay Guzder $1.7 million "to settle fully and finally" the Fort Bend Lawsuit and the AAA Arbitration. The Rule 11 Agreement was executed by counsel for Guzder same day. PIKA, Kasnavia, and Kasnavia's family members also signed the document.

Under the Rule 11 Agreement, the parties agreed to execute a "final settlement agreement" to include specified material terms, including the exchange of mutual releases and payment of the settlement amount. In the proposed releases, Guzder, his wife Zenobia Guzder, and EETCO would agree to exchange mutual releases with MKM, Irani, PIKA, Kasnavia, and others. The releases would "grant a full and final release of any and all claims or potential claims, known or unknown, against the respective parties," except that Guzder would not release "any claims against MKM's outside auditors or accountants, including, but not limited to, Suhrid Thakore." The Rule 11 Agreement further provided that, prior to disbursement of the settlement amount, Guzder, Zenobia, and EETCO would agree to release all claims asserted by them in the Fort Bend Lawsuit and the AAA Arbitration and to dismiss all claims asserted in those lawsuits. Khodi Irani, his wife Parinaz Irani, and MKM would agree to release all claims asserted by them in the AAA Arbitration and dismiss all claims asserted in that dispute.

In addition, Guzder would provide (through counsel) notice to MKM and PIKA "10 days before filing motions to dismiss the disputes as contemplated herein." After receiving that notice, and prior to the filing of the motions to dismiss, MKM and/or PIKA were to wire transfer the settlement amount to Guzder's counsel within 10 days, to be held in trust until the required dismissals were entered. If all the actions were not dismissed, then the settlement amount was to be returned to MKM and PIKA and any releases provided by the parties would automatically be rescinded and ineffective.

Guzder also agreed to provide a "Side Letter" simultaneously with the execution of the final settlement agreement. In the Side Letter, Guzder was to memorialize his intent to obtain a dismissal of the Qui Tam Lawsuit and to explain "that he no longer wishes to prosecute" that lawsuit.

4

Contemporaneously, and before the execution of the Rule 11 Agreement, MKM sought confirmation that Guzder would sign a proposed form of the Side Letter detailing Guzder's reasons for dismissing the Qui Tam Lawsuit, including a statement that "the evidence developed in the lawsuit does not support the allegations of fraud or violations of the False Claims Act made against [Irani] and MKM in the Qui Tam Lawsuit."[1] MKM and PIKA wanted the Side Letter with the proposed language because they were concerned that Guzder's allegations in the Qui Tam Lawsuit would jeopardize PIKA's ongoing participation in the 8(a) program and MKM's continued work for governmental entities. Via email, Guzder's counsel confirmed Guzder's approval of the proposed Side Letter "as part of the Settlement Agreement and consistent with our discussions regarding the confidentiality provisions."

After executing the Rule 11 Agreement, the parties continued to negotiate the final settlement documents well beyond the 12-day deadline. From June through November 2011, the parties negotiated terms such as the scope and content of the releases, confidentiality provisions, covenants not to sue, disclaimers of rights, damage caps on suits related to the final settlement agreement, and non-disparagement provisions.

---

[1] The proposed Side Letter included, among other things, the following language:

During the six years since filing the Qui Tam Lawsuit, I understand that the Government elected not to intervene in the action after its investigation of the allegations. I have been integrally involved in discovery in the Qui Tam Lawsuit, including specifically in the review of documents provided by your family's and/or MKM's banks, insurers and accountants, and by other third parties. Importantly, I also reviewed the Small Business Administration's files that the agency produced in the lawsuit.

Based on my assessments regarding the merits of the claims and, in particular, my review of information obtained in discovery, explanations provided by defendants, the SBA records, and SBA regulations, I have concluded that the evidence discovered to date does not support claims against you and MKM for fraud against the U.S. Government or violations of the False Claims Act.

Shortly after the Rule 11 Agreement was signed, and before any final settlement documents were executed, Guzder circulated draft dismissal papers for the Fort Bend Lawsuit, the AAA Arbitration, and the Qui Tam Lawsuit. On July 18, Guzder's counsel gave notice to MKM and PIKA that Guzder intended to file the dismissals of the present lawsuit and the AAA arbitration, and stated that the notice triggered the Rule 11 Agreement's provision that the settlement funds were to be wired to Guzder's counsel's trust account within ten days. MKM and PIKA did not wire the funds, however, contending in an August 8 email that the Rule 11 Agreement was merely a "preliminary agreement to agree" and that Guzder's proposed notice of dismissal of the Qui Tam Lawsuit was premature because the terms of a final settlement had not been reached and Guzder had not provided the Side Letter. Nevertheless, the parties continued negotiations.

On September 6, Guzder's counsel forwarded a signed version of the Side Letter that differed substantially from the May 27 version. The entirety of the substantive portion of the letter read as follows:

> Based on the settlement memorialized in our Rule 11 Agreement of May 27, 2011, I no longer wish to prosecute the Qui Tam Lawsuit. In accordance with paragraph 5 and 6 of our settlement, I have complied with all terms of the Rule 11 Agreement, including instructing my lawyers to communicate my desires to the Department of Justice and obtain the government's consent in the dismissal of my Qui Tam Lawsuit, which they have done and which resulted in the Court's final dismissal of the Qui Tam Lawsuit on August 29, 2011.

Guzder also signed this version as President of EETCO, rather than individually as in the May 27 version.

That same day, Guzder filed a supplemental petition, alleging that MKM and PIKA breached the Rule 11 Agreement by failing to fund the settlement ten days after Guzder gave notice of his intent to dismiss the pending actions. Guzder also

sought reasonable attorney's fees under section 38.001(8) of the Texas Civil Practice and Remedies Code. Attached to Guzder's supplemental petition was a copy of the Rule 11 Agreement, which had been filed with the trial court on July 25.

After Guzder alleged that appellants had breached the Rule 11 Agreement, the parties nevertheless continued to negotiate and exchange drafts, but the parties were unable to reach an agreement. In April 2012, Guzder filed a "Motion for Summary Judgment to Enforce Rule 11 Settlement." MKM and PIKA filed amended answers and responses to the summary judgment motion. MKM and PIKA also jointly filed a cross-motion for summary judgment asserting that the Rule 11 Agreement was unenforceable. Guzder responded to the cross-motion. On August 29, 2013, the trial court granted Guzder's motion for summary judgment, impliedly denying the cross-motion. Guzder moved for rendition of a final judgment, which the defendants opposed because not all parties and claims had been addressed or disposed of. Guzder filed a motion for severance.

On October 22, 2013, the trial court signed a document titled "Interlocutory Final Judgment as to Some Parties," which reiterated its grant of summary judgment to Guzder and awarded $1.7 million in damages plus prejudgment interest on that amount and attorney's fees of $260,000. The trial court then granted Guzder's motion for severance. MKM and PIKA jointly filed a motion for new trial or to modify the judgment, as well as a request for findings of fact on the attorney's fees issue. Ultimately, the trial court signed a "Modified Final Judgment" in Guzder's favor on January 27, 2014.[2] No findings of fact were filed.

---

[2] The Modified Final Judgment reflected that the trial court granted in part the motion for new trial or motion to modify the judgment and deleted an award of conditional appellate attorney's fees to Guzder, but otherwise did not alter any relief previously awarded.

## SUMMARY JUDGMENT STANDARD OF REVIEW

We review summary judgments de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Under the well-established standards governing traditional motions for summary judgment, the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We review a summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam).

When a movant meets that burden of establishing each element of the claim or defense on which it seeks summary judgment, the burden then shifts to the non-movant to disprove or raise an issue of fact as to at least one of those elements. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014. When a party asserts an affirmative defense to defeat a summary judgment, it must come forward with evidence sufficient to raise a fact issue on each element of at least one of its affirmative defenses. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). To prevail on the affirmative defense, the non-movant must prove each element of its defense as a matter of law, leaving no issues of material fact. *See Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996). When we review cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered. *Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001).

Appellants MKM and PIKA contend the trial court erred by granting summary judgment on Guzder's breach of contract claim based on the Rule 11 Agreement and by denying appellants' cross-motion on the Rule 11 Agreement's enforceability. In support of these contentions, appellants make six principal arguments: (1) the Rule 11 Agreement is unenforceable as a matter of law or, alternatively, fact issues as to the parties' intent and the affirmative defense of fraudulent inducement preclude summary judgment for Guzder; (2) Guzder failed to perform as required to recover for breach of contract; (3) Guzder's failure to perform conditions precedent relieves appellants of the duty to pay Guzder; (4) Guzder failed to prove damages of $1.7 million as a matter of law under any accepted legal measure; (5) the judgment effectively awarded specific performance unilaterally to Guzder even though he never requested that equitable remedy and appellants were not awarded anything in exchange for the $1.7 million; and (6) Guzder failed to prove as a matter of law that his reasonable and necessary attorney's fee was $260,000.

## I.     The Rule 11 Agreement is an Enforceable Contract

In their first issue, appellants contend that the trial court erred by granting summary judgment in Guzder's favor and by failing to grant appellants' motion for summary judgment. According to appellants, the Rule 11 Agreement is not enforceable as a matter of law because the parties did not intend the Rule 11 Agreement to be a final settlement agreement and it lacks essential and material terms. Consequently, appellants argue, the Rule 11 Agreement is no more than an unenforceable agreement to agree and appellants are entitled to summary judgment in their favor. Alternatively, appellants contend that genuine issues of material fact exist on the enforceability of the Rule 11 Agreement. Finally, appellants contend

that a fact question exists whether Guzder fraudulently induced appellants into signing the Rule 11 Agreement.

## A.    Enforceability of the Rule 11 Agreement

The trial court granted summary judgment on Guzder's breach of contract claim based on the Rule 11 Agreement purporting to settle the parties' disputes. *See* Tex. R. Civ. P. 11.[3] To prevail on his breach of contract claim, Guzder was required to prove: (1) a valid contract existed between Guzder and appellants; (2) Guzder tendered performance or was excused from doing so; (3) appellants breached the terms of the contract, and (4) Guzder sustained damages as a result of appellants' breach. *See WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

Rule 11 agreements have long been recognized as "an effective tool for finalizing settlements by objective manifestation so that the agreements 'do not themselves become sources of controversy.'" *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007) (quoting *Kennedy v. Hyde*, 682 S.W 2d 525, 530 (Tex. 1984)). Courts construe Rule 11 settlement agreements just as they would any contract. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.).

The intent of the parties to be bound is an essential element of an enforceable contract. *See Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746

---

[3] Rule 11 provides: "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Compliance with Rule 11 is a threshold requirement for enforceability. *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007). It is undisputed that the Rule 11 Agreement in this case was in writing, signed, and filed with the court.

(Tex. 1988). A Rule 11 settlement agreement also must contain all the essential terms of the settlement. *Padilla*, 907 S.W.2d at 460. Essential or material terms of a Rule 11 settlement agreement include payment terms and release of claims. *See id.* at 460–61. Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Agreements to enter into future contracts are enforceable if they contain all material terms. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (per curiam). Thus, a binding settlement may exist when parties agree upon some terms, understanding them to be an agreement, and leave other terms to be made later. *See, e.g., Foreca*, 758 S.W.2d at 746; *Eastman Gas Co. v. Goodrich Petroleum Co.*, 456 S.W.3d 319, 326 (Tex. App.—Texarkana 2015, pet. denied); *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.). While Texas courts favor validating transactions rather than voiding them, a court may not create a contract where none exists and generally may not add, alter, or eliminate essential terms. *Eastman Gas Co.*, 456 S.W.3d at 326. Generally, the materiality of a contract term is determined on a contract-by-contract basis, in light of the circumstances of the contract. *Amedisys*, 437 S.W.3d at 514. A settlement agreement containing all necessary terms is enforceable as a matter of law. *McCalla*, 416 S.W.3d at 416.

### (1) The Parties' Intent to be Bound

Appellants argue that the parties did not treat the Rule 11 Agreement as a binding contract because it: (1) contemplated a future "final settlement agreement" by a date certain; (2) stated the final settlement agreement would *include* the stated terms but did not state that the final agreement's terms would be *restricted* to the

stated terms; (3) did not spell out the terms of the contemplated releases that had yet to be drafted; (4) contemplated releases to be signed by persons and entities who did not sign it; and (5) was drafted in the future tense, describing numerous events to occur in the future rather than simultaneously with its execution. Appellants also point to their affidavits controverting Guzder's assertion of the Rule 11 Agreement as a final agreement and assert that this evidence must be accepted as true under the summary judgment standard of review.

The opening line of the Rule 11 Agreement reflects it was prepared "to memorialize the terms of the proposed settlement agreement pursuant to Tex. R. Civ. P. 11." The Rule 11 Agreement provides that "[t]he parties understand that the primary reason for entering into this agreement is to obtain peace though a complete and final resolution of all disputes among them . . . ." Under the Rule 11 Agreement, MKM and PIKA together agreed to pay Guzder $1.7 million "to settle fully and finally" the Fort Bend Lawsuit and the AAA Arbitration. The parties also agreed to execute "a final settlement agreement" within twelve days of the execution of the Rule 11 Agreement.

Courts have often "enforced settlement agreements that contemplate additional documentation or leave open certain terms for future negotiation." *Stergiou*, 438 S.W.3d at 747–48 & n.8 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (collecting cases); *see also Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972) (stating that parties may agree upon certain contractual terms and leave other matters for later negotiation). The critical issue for determining enforceability when the parties agree that some terms will remain open is whether the parties intended for their agreement to be a present, binding agreement in the absence of an agreement on the remaining terms or whether they intended their agreement to have no legal significance until agreement on the remaining terms is

reached. *Stergiou*, 438 S.W.3d at 748. Although intent to be bound is generally a question of fact, it may be determined as a matter of law. *Foreca*, 758 S.W.2d at 746; *WTG Gas Processing*, 309 S.W.3d at 643.

In this case, the document was expressly drafted as a Rule 11 agreement—a recognized tool for finalizing settlements—presumably because the parties intended to settle their disputes by entering into an enforceable contract. *See Knapp Med. Ctr.*, 238 S.W.3d at 768. Moreover, the document contains no language indicating that it was merely intended as a preliminary, non-binding agreement. *See John Wood Grp. USA, Inc.*, 26 S.W.3d 12, 19 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (cautioning that a party who does not wish to be prematurely bound by a letter agreement should include a provision clearly stating that the letter is nonbinding). Nor does it provide that the parties' agreement was "subject to" a more formal agreement or contain language indicating that certain actions were conditions precedent to the agreement's enforceability. *Compare MCRB I Ltd. v. Sw. Rail Indus., Inc.*, No. 14-10-00922-CV, 2011 WL 4031023, at *3–4 (Tex. App.—Houston [14th Dist.] Sept. 13, 2011, no pet.), *with Martin v. Martin*, 326 S.W.3d 741, 753–54 (Tex. App.—Texarkana 2010, pet. denied); *John Wood Grp. USA*, 26 S.W.3d at 18.

Contrary to appellants' assertions, the Rule 11 Agreement is not unenforceable merely because the parties contemplated taking additional actions and executing a final settlement agreement at a later date. And although appellants complain that the terms of the releases were not spelled out and had yet to be drafted, the Rule 11 Agreement identified the specific parties and claims that would be released, as well as the claims to be excluded from the releases.[4] The

---

[4] Although appellants complain that the Rule 11 Agreement is unenforceable because Zenobia Guzder (Guzder's wife) and EETCO (Guzder's company) did not sign it, the face of the Rule 11 Agreement, as drafted by MKM's counsel, reflects that it was intended to bind only

Parties also agreed that Guzder would make certain representations in the Side Letter he was to provide contemporaneously with the final documentation. Appellants point to nothing in the language of the Rule 11 Agreement that conclusively shows that the parties did not intend it to be an enforceable contract or that raises a fact issue concerning the parties' intent to be bound.

Appellants next assert that the parties' continued negotiations and other conduct after the Rule 11 Agreement's execution show that the parties did not intend to be bound to a settlement contract. Appellants note that for months after executing the Rule 11 Agreement, the parties engaged in ongoing negotiations, conference calls, and exchanges of drafts over several months. But working toward final settlement documents is exactly what the Rule 11 Agreement contemplated the parties would do.

Other conduct of the parties shows that immediately after the Rule 11 Agreement was signed, the parties took actions consistent with an understanding that a binding agreement had been reached. For example, six days after the Rule 11 Agreement was executed, MKM's counsel notified the case manager in the AAA Arbitration that "the Parties have entered into an agreement to settle this proceeding" and requested that the proceeding be abated "while the parties worked toward a final, comprehensive settlement agreement." In December, the parties and the court were notified by the AAA that the arbitration proceeding had been administratively closed.

Guzder and appellants also filed a "Joint Notice of Settlement and Request for 30-Day Stay" with the federal court in the Qui Tam Lawsuit. Appellants point

---

Guzder individually. In part, the document recites, "[i]f the terms of this proposal are acceptable to *Mr. Guzder*, please sign on his behalf below. . . . [T]his offer is available to *Mr. Guzder* until Friday, May 20, 2011 . . ." (emphasis added). Likewise, the signature line provides for Guzder's counsel to sign "on behalf of Jal B. Guzder."

out that the notice informed the federal court that a settlement was "pending" while the parties were "working toward executing final settlement documents," and that parties were requesting only a stay rather than a dismissal. According to appellants, Guzder took these actions because he realized that the parties were still contemplating negotiating and signing a final agreement, "which might never reach fruition." However, the notice further informs the court that "[o]n Friday, May 27, 2011, [the parties' settlement discussions] culminated in a settlement reflected in an Agreement under Texas Rule of Civil Procedure 11." The evidence also shows that the parties requested a stay because several motions were pending and the stay allowed Guzder time to notify the government of his intent to dismiss the action.

On June 10, Guzder circulated to counsel for MKM and PIKA a proposed dismissal order filed in the Qui Tam Lawsuit reciting that "[t]he Court . . [has] been advised . . . that an amicable settlement has been reached in a related lawsuit and [the parties] . . . want to dismiss this action . . . ." MKM's counsel replied that the draft "looks fine to us." The proposed order was submitted to the federal court, with copies to counsel for MKM and PIKA, and signed June 19, 2011. Counsel for MKM and PIKA lodged no objection. The order provided for dismissal with prejudice as to Guzder and without prejudice as to the government in forty-five days from the date of the order (August 4, 2011). After the government consented to the dismissal on August 3, the federal judge entered an order formally dismissing the Qui Tam case on August 29, 2011.

Despite acknowledging a settlement in the federal and arbitration proceedings, MKM contends that throughout the entire process it "consistently communicated its position" that the Rule 11 Agreement was never intended to be "the final settlement agreement." But the issue is not whether the parties intended the Rule 11 Agreement to be the final settlement agreement, it is whether they

intended the Rule 11 Agreement to be a binding contract. Significantly, the first time appellants communicated that they believed the Rule 11 Agreement was only an unenforceable "preliminary agreement to agree" was on August 8, 2011, after the date the Qui Tam Lawsuit was set for automatic dismissal with prejudice as to Guzder. Then, one day after the federal court had signed the dismissal order, MKM's counsel communicated his "surprise[]" that the proposed dismissal order represented that the parties had reached an agreement, "since the Rule 11 letter was nothing more than an agreement to agree."

The only earlier communication appellants point to is a July 27, 2011 email concerning one of Guzder's proposed draft settlement documents. In this email, MKM's counsel "note[d]" that the Rule 11 Agreement was not signed by all of the parties and expressed disagreement with Guzder's position that his preparation of the dismissal notice in the Qui Tam Lawsuit triggered the settlement funding requirement. The email, while critical of Guzder's proposed draft, did not include any indication that appellants did not believe the Rule 11 Agreement was enforceable. The timing of appellants' communications questioning the enforceability of the Rule 11 Agreement, coming only after substantial steps had been taken by both parties to dismiss the Qui Tam Lawsuit and the AAA arbitration, does not raise a fact issue concerning the parties' intent to be bound.

Finally, appellants complain that Guzder served MKM and PIKA with additional written discovery on the merits of the underlying claims in September, and that Guzder sought discovery from them in the Thakore lawsuit, which appellants contend they spent thousands of dollars defending from November 2011 to August 2012. According to appellants, these actions are inconsistent with an understanding that the case was settled and show that Guzder knew the Rule 11 Agreement was not intended to be final, because he knew appellants were

16

motivated to obtain peace with respect to all litigation. However, Guzder took these actions only after filing the supplemental petition alleging that appellants had breached the Rule 11 Agreement.

We conclude that the language of the Rule 11 Agreement and the surrounding circumstances conclusively shows that the parties intended to enter into a binding, enforceable agreement even though the parties contemplated executing a formal settlement document and taking additional actions at a later date. Moreover, because the language unambiguously reflects the parties' intent to be bound, appellants' affidavits to the contrary may not be considered. *See MCRB I, Ltd*, 2011 WL 4031023, at *4.

### (2)    Essential and Material Terms

Appellees also contend that the lack of essential and material terms shows the Rule 11 Agreement was not a final agreement. First, appellants argue that the Rule 11 Agreement contains no release language, but provides only that full releases "will" be provided in the future. Second, appellants argue that Guzder never provided the Side Letter in the form negotiated contemporaneously with the Rule 11 Agreement. Third, appellants argue that other material terms contemplated by the final settlement agreement remained unresolved, including assent to the final agreement and execution of comprehensive releases by Zenobia Guzder and EETCO, confidentiality provisions, covenants not to sue, disclaimers of rights, damage caps on related lawsuits, non-disparagement provisions, and discovery and associated costs in related litigation.

As discussed previously, the Rule 11 Agreement provides that (1) MKM and PIKA will pay Guzder $1.7 million to fully and finally settle the Qui Tam Lawsuit and the AAA Arbitration, and (2) MKM, PIKA, Guzder, and the other remaining individual defendants in the Qui Tam Lawsuit will exchange mutual releases that

"will grant a full and final release of any and all claims or potential claims, known or unknown, against the respective parties." It also requires Guzder to provide the Side Letter containing certain representations when the final settlement agreement is executed, which was to occur within 12 days. We conclude that these terms constitute the essential and material terms of the parties' settlement. *See, e.g.*, *Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet. denied) (holding that settlement agreement contained all material terms when one party agreed to pay other party $150,000 and all parties agreed to execute full releases); *CherCo Props., Inc. v. Law, Snakard, & Gambill, P.C.*, 985 S.W.2d 262, 265–66 (Tex. App.—Fort Worth 1999, no pet.) (settlement agreement including terms of payment and a statement that the parties would execute releases contained all material terms).

According to appellants, however, other terms negotiated after the Rule 11 Agreement was signed remained unresolved, such as confidentiality provisions, covenants not to sue, disclaimers of rights, damage caps on suits related to the final settlement agreement, non-disparagement provisions, and discovery and associated costs in related litigation.[5] While these terms may have been important to one party or the other, the parties' failure to resolve their differences concerning other non-essential or collateral matters left for future negotiation do not render the Rule 11 Agreement unenforceable as a matter of law. *See Stergiou*, 438 S.W.3d at 744–45; *see also E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.) ("Where the parties have intended to conclude a bargain, the agreement's silence as to non-essential, or collateral, matters is not

---

[5] In affidavits, appellants state in a conclusory fashion that they considered such terms "material" or "important" or "deal-breakers," but do not provide any factual basis for their statements. Affidavits containing conclusory statements that fail to provide the underlying facts to support the conclusion are not proper summary judgment evidence. *Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 931 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

fatal."); *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 259 (Tex. App.—Austin 2002, no pet.) (parties need not settle all pending issues for mediated settlement agreement to be enforceable, but may agree on certain severable issues, while not resolving the entire dispute). Appellants' companion argument that Guzder never provided them with a signed release or a satisfactory Side Letter goes to whether Guzder failed to perform under the Rule 11 Agreement, not whether the Rule 11 Agreement contains the essential terms of the settlement.

We conclude that appellants have failed to show that the Rule 11 Agreement is unenforceable as a matter of law or that material and genuine fact issues exist concerning its enforceability. We therefore hold that the trial court did not err by impliedly denying appellants' summary judgment motion.

### (3)    Fraudulent Inducement

Finally, appellants contend that a genuine issue of material fact exists as to their affirmative defense that Guzder fraudulently induced them into signing the Rule 11 Agreement.[6] As the non-movants asserting fraudulent inducement as an affirmative defense, appellants were required to provide sufficient summary judgment evidence to create a fact issue on each element of the defense. *See Brownlee*, 665 S.W.2d at 112. Fraudulent inducement is a type of fraud claim that requires a showing that: (1) a false material misrepresentation was made that was either known to be false when made or was asserted without knowledge of its truth or falsity, (2) it was intended to be acted on, (3) it was relied on, and (4) it caused injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,

---

[6] Guzder contends that PIKA waived the affirmative defense of fraudulent inducement because it neither pleaded nor raised it in its response to Guzder's summary judgment motion. However, PIKA's response specifically incorporated MKM's arguments on the issue into its response and argued that if the Rule 11 Agreement was unenforceable as to MKM, it was also unenforceable as to PIKA. We conclude that the issue is not waived as to PIKA.

19

960 S.W.2d 41, 47 (Tex. 1998). Because appellants point to no evidence to show that they suffered any injury from Guzder's alleged fraudulent inducement of the Rule 11 Agreement, they have failed to raise a genuine issue of fact on each element of the affirmative defense.

## II. Fact Issues Exist Concerning Guzder's Performance

In their second issue, appellants contend that Guzder failed to perform as required to recover for breach of contract. To prevail on his breach of contract claim, Guzder was required to prove not only the existence of a valid contract, but also to prove he tendered performance or was excused from doing so. *See WTG Gas Processing, L.P.*, 309 S.W.3d at 643; *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 234 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In the trial court, Guzder argued that he performed his part of the Rule 11 Agreement by: (1) dismissing the Qui Tam Lawsuit; (2) circulating draft dismissal papers for the other proceedings; and (3) providing a version of the Side Letter.

When one party to a contract materially breaches, the non-breaching party must elect to either terminate performance or continue performance. *Gupta v. E. Idaho Tumor Institute, Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If the non-breaching party treats the contract as continuing and demands performance from the breaching party, then the non-breaching party must fully perform as well, because the contract continues in force for the benefit of both parties. *Id*. A party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part. *Long Trusts v. Griffin*, 222 S.W.3d 412, 415–16 (Tex. 2006); *Gupta*, 140 S.W.3d at 757.

Guzder contends that appellants' failure to transfer settlement funds to Guzder's counsel within ten days after receiving notice of Guzder's intent to file

motions to dismiss the Fort Bend Lawsuit and the AAA Arbitration was a breach of the Rule 11 Agreement. Guzder asserts that he provided such a notice on July 18, 2011, but appellants failed to transfer the funds to Guzder's counsel by July 28 or any time thereafter. Assuming this action constituted a breach of the Rule 11 Agreement, Guzder's actions after July 28 conclusively demonstrate that he chose to treat the alleged agreement as continuing.

Among other things, Guzder (1) allowed the federal court to sign the order dismissing the Qui Tam Lawsuit with prejudice on August 29, 2011, even though appellants allegedly breached the Rule 11 Agreement a month earlier; (2) continued negotiating and exchanging drafts for the "final settlement agreement" terms through November 2011; (3) provided a version of the Side Letter on September 6, 2011; (4) demanded performance from MKM and PIKA as late at October 2011; and (5) requested confirmation in November 2011 that appellants had transferred the settlement funds to their counsel. Because Guzder elected to continue performance under the Rule 11 Agreement, he was required to show that he fully performed under the contract. *See Gupta*, 140 S.W.3d at 757–58 (holding non-breaching party's failure to perform not excused).

Appellants contend that Guzder failed to perform because, among other things, he never provided a Side Letter with the previously agreed text. As discussed above, before execution of the Rule 11 Agreement, MKM's counsel sent a proposed form of the Side Letter, asking Guzder's counsel to confirm that it would be signed by Guzder "in satisfaction of Paragraph 5 of the Rule 11 Agreement." Guzder's counsel confirmed that the proposed Side Letter was "approved pursuant to paragraph 5 of the Rule 11 Agreement, as part of the Settlement Agreement and consistent with our discussions regarding the confidentiality provisions." The version of the Side Letter Guzder provided to

21

appellants on September 6, 2011 tracks the Rule 11 Agreement by stating, in relevant part, that Guzder "no longer wish[es] to prosecute the Qui Tam Lawsuit." However, this version omits the substantive language confirming the Qui Tam Lawsuit's lack of factual and legal support, and is not signed by Guzder individually. Appellants maintain that they never would have signed the Rule 11 Agreement without Guzder's agreement to the form of the Side Letter previously approved by Guzder's counsel.

Both Irani and Kasnavia submitted affidavits in opposition to Guzder's motion for summary judgment in which they explained the significance of obtaining a Side Letter. In his affidavit, Irani stated that that he informed Guzder's counsel that a Side Letter was essential to any settlement to "help alleviate any concerns raised by clients or potential clients arising from Mr. Guzder's false accusations that MKM committed fraud against the government." Further, Irani stated he would not have agreed to the Rule 11 Agreement if Guzder or his counsel did not agree to execute and deliver the agreed-upon Side Letter, and he agreed to execute the Rule 11 Agreement only after Guzder's counsel agreed to the form and language of the Side Letter. Kasnavia also stated that he wanted the Side Letter from Guzder for the purpose of "vindicating me and [PIKA] from serious allegations, including fraud," and that without such a letter, neither he nor PIKA would consider the matter fully and finally resolved.

Guzder forwarded the allegedly non-conforming version of the Side Letter to appellants on September 6, 2011. About two weeks later, Guzder's counsel sent an email to counsel for Irani and MKM in which he expressed dismay at perceived delays and insisted on "receiv[ing] a firm commitment from your client as to what he will sign along with confirmation of funding *before we can even begin to commit to anything related to the side-letter*" (emphasis added). Guzder did not

provide any other signed version of a Side Letter.

In his brief, Guzder argues that his counsel did not unqualifiedly approve the proposed May 27, 2011 Side Letter. Instead, he argues that his counsel conveyed that the draft was satisfactory "if it ultimately included, or was made subject to, confidentiality provisions." Further, Guzder states that "[c]onfidentiality was required because the draft included statements in addition to those provided for by paragraph 5 of the Rule 11 Agreement." But, Guzder's approval of the proposed language was not expressly made "subject to" any confidentiality provision, and the proposed Side Letter's text contained no confidentiality provisions. Instead, Guzder's counsel confirmed approval of the proposed language "consistent with our discussions regarding the confidentiality provisions." Because counsel "confirmed" that Guzder "approved" appellants' proposed Side Letter, but did so with reference to the proposed Side Letter being "consistent" with discussions concerning unidentified confidentiality provisions, we conclude that genuine issues of material fact exist concerning whether counsel's email constituted a representation that Guzder unqualifiedly agreed to the Side Letter terms proposed by appellants, and thus whether Guzder performed his obligation under the Rule 11 Agreement to provide the Side Letter when he presented appellants with the September 6 version.

Because we conclude that genuine issues of material fact exist concerning Guzder's performance of his obligation to provide a Side Letter under the Rule 11 Agreement, we hold that the trial court erred by granting Guzder's motion for summary judgment.[7]

---

[7] Because fact issues exist concerning Guzder's performance require that the case be reversed and remanded, it is unnecessary to consider whether, as appellants assert, Guzder failed to fully perform his obligations to provide releases and to dismiss all clams in all proceedings, not merely the Qui Tam Lawsuit.

23

## Conclusion

We hold that the Rule 11 Agreement is an enforceable agreement, and therefore the trial court did not err by impliedly denying appellants' motion for summary judgment on enforceability. However, genuine issues of material fact exist concerning Guzder's performance of his obligations under the Rule 11 Agreement that preclude summary judgment in his favor on his breach-of-contract claim. We therefore reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.


/s/     Ken Wise
Justice


Panel consists of Justices Christopher, Donovan, and Wise.