# Court of Appeals
## Tenth Appellate District of Texas

### 10-23-00145-CV

Blue Angel Weimaraner Rescue, Inc.,
Appellant

v.

Jacob Ayars and Brandy Tillman,
Appellees

On appeal from the
County Court at Law No. 2 of Johnson County, Texas
Judge F. Steven McClure, presiding
Trial Court Cause No. CC-C20210183

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Blue Angel Weimaraner Rescue, Inc., appeals from the trial court's order granting Jacob Ayars's and Brandy Tillman's motion for summary judgment. We will affirm.

### Factual and Procedural Background

Blue Angel is a nonprofit organization that rescues unwanted dogs and places them with permanent homes. In March 2021, Ayars and Tillman agreed

to foster one of Blue Angel's dogs, Oliver, and they planned to permanently adopt the dog. At some point, the relationship between Blue Angel and Ayars and Tillman deteriorated, and Blue Angel demanded that they return Oliver. After Ayars and Tillman did not return Oliver, Blue Angel filed suit against them[1] for conversion, theft, and breach of contract. Ayars and Tillman filed a counterclaim for breach of contract alleging that they had entered into a valid oral contract to permanently adopt Oliver and that Blue Angel had breached the contract by demanding return of the dog and by trying to repossess the dog.

In January 2022, the parties entered into settlement negotiations. Pat Austin, the President of Blue Angel, through Randy Turner, the corporate attorney for Blue Angel, authorized DaNae Couch, who was retained to represent Blue Angel on this matter, to make the following settlement offer:

> They pay $7,700 and sign [Blue Angel's] adoption contract . . . ,
> They sign non-disclosure and non-disparagement agreements,
> Each side is responsible for their own attorney's fees,
> Both sides non-suit with prejudice,
> They keep Oliver.

On January 13, 2022, Couch sent an email to Ayars's and Tillman's counsel noting she was authorized to make the following settlement offer:

1. $8,500 payable to [Blue Angel];
2. Executed Adoption Agreement for Oliver between [Blue Angel] and [Ayars and Tillman][;]

---

[1] Blue Angel also filed suit against Schellie Ayars, but the record shows that she was dismissed from the suit.

3. Settlement Agreement between [Blue Angel, Ayars, and Tillman] with mutual releases, confidentiality, and non-disparagement;
4. Return of the crate;
5. Non-suit with prejudice, with all parties bearing their own attorney's fees.

Counsel for Ayars and Tillman responded to Couch with a counteroffer including all of Blue Angel's proposed terms except it made an offer for $5,000 payable to Blue Angel. On January 17, 2022, Couch sent the following email to counsel for Ayars and Tillman:

This email is being sent to confirm our settlement agreement as follows:

1. $6,500 payable to [Blue Angel] within 30 days;
2. Executed Adoption Agreement for Oliver between [Blue Angel] and [Ayars and Tillman][;]
3. Settlement Agreement between [Blue Angel, Ayars, and Tillman] with mutual releases, confidentiality, and non-disparagement;
4. Return of the crate;
5. Non-suit with prejudice with all parties bearing their own attorney's fees.

Counsel for Ayars and Tillman responded that same day noting they were "settled on those terms."

On January 31, 2022, Ayars and Tillman filed a Notice of Settlement in the trial court that included the terms of the agreement as set out in the January 17 email and also included the email exchange between respective counsel. Blue Angel filed a response arguing that the parties did not have a finalized settlement agreement but rather "an agreement-to-agree" because

they had not accepted the terms of the adoption agreement. Blue Angel stated in its response that the offer to settle was conditioned on Ayars and Tillman executing an Adoption Agreement for Oliver and that Austin understood that they would sign Blue Angel's Standard Adoption Agreement without modification. Because Ayars and Tillman presented a modified Adoption Agreement, Blue Angel maintained that there was no settlement between the parties. Blue Angel terminated Couch and retained new counsel to represent them in this matter.

Ayars and Tillman replied to Blue Angel's response and stated that the settlement agreement was not an "agreement-to-agree" because the parties had agreed to all material terms, and there was no mutual mistake. Ayars and Tillman then filed a Motion to Enforce the Rule 11 Settlement requesting the trial court to declare that the January 17 Agreement was binding on the parties. Blue Angel responded that the Rule 11 Agreement was not enforceable as a written contract. After a hearing on March 30, 2022, the trial court signed an order granting Ayars's and Tillman's Motion to Enforce the Rule 11 Settlement Agreement. The trial court determined that the January 17 Agreement settled all of the claims and disputes of the parties. The Order directed the parties to "work through the language of an Adoption Agreement and a Settlement Agreement" on or before May 1, 2022. The parties were ordered to jointly file the Adoption Agreement and the Settlement Agreement

with the trial court. However, the parties were unable to agree on the terms of the Adoption Agreement.

Ayars and Tillman filed a supplemental counterclaim to include breach of the valid and enforceable contract (the January 17 Settlement Agreement). Ayars and Tillman filed a Motion for Summary Judgment on their breach of contract counterclaim. They argued that there was no genuine issue of material fact because the trial court had already approved and confirmed that the parties entered into a valid Rule 11 Settlement Agreement. Blue Angel responded that summary judgment was not appropriate because there was a fact issue over the terms of the Adoption Agreement. Blue Angel also claimed that it had recently discovered that Couch extended terms of the settlement agreement that Austin did not authorize. According to Austin, she only authorized use of Blue Angel's Standard Adoption Agreement. Couch extended an offer for an executed Adoption Agreement without specifying that only the Blue Angel Standard Adoption Agreement was acceptable. Austin would not agree to any substantial modifications of the Blue Angel Standard Adoption Agreement. Blue Angel maintained that the January 17 Agreement was voidable because of the unilateral mistake by its former counsel.

The trial court granted Ayars's and Tillman's Motion for Summary Judgment and awarded Ayars and Tillman attorney's fees. This appeal followed.

### Issues One and Two

In its first and second issues, Blue Angel argues that because there was no valid Settlement Agreement, the trial court erred by granting Ayars's and Tillman's motion for summary judgment and motion to enforce the Rule 11 Settlement Agreement.

## A.    Standard of Review and Applicable Law

### 1.    Summary Judgment

We review a trial court's order granting summary judgment *de novo*; in doing so, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in favor of the nonmovant, and take as true all evidence favorable to the nonmovant.  *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).  In a traditional summary judgment motion, the movant must state specific grounds, and if the movant conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of an affirmative defense, the movant is entitled to summary judgment.  TEX. R. CIV. P. 166a(c); *see KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).  When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

"If the order granting the summary judgment does not specify the grounds upon which judgment was rendered, we must affirm the summary judgment if any of the grounds in the summary judgment motion is meritorious." *Palacio v. AON Props., Inc.*, 110 S.W.3d 493, 497 (Tex. App.—Waco 2003, no pet.) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

## 2. Enforcement of a Settlement Agreement

When one party withdraws consent before judgment is entered on a written settlement agreement, the agreement may still be enforced as a contract. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009); *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) ("If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract."); TEX. R. CIV. P. 11.

When consent is withdrawn, the party seeking enforcement of the settlement agreement must pursue a separate claim for breach of contract. *Ford Motor Co.*, 279 S.W.3d at 663; *Padilla*, 907 S.W.2d at 461. The action must be based on proper pleading and proof. *Ford Motor Co.*, 279 S.W.3d at 663; *Padilla*, 907 S.W.2d at 462. A motion seeking enforcement of the settlement agreement is a sufficient pleading to allow the trial court to render judgment enforcing the settlement, but only if the motion satisfies the general

purpose of pleadings, which is to give the other party fair notice of the claim and the relief sought. *Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351, 361 (Tex. App.—Corpus Christi–Edinburg 2007, orig. proceeding [mand. denied]); *Neasbitt v. Warren*, 105 S.W.3d 113, 117 (Tex. App.—Fort Worth 2003, no pet.).

## B.   Discussion

Blue Angel specifically argues that no valid settlement ever existed because (1) no form of adoption agreement other than the Blue Angel Standard Adoption Agreement was authorized, (2) the Rule 11 Agreement was an unenforceable "agreement to agree," (3) the Rule 11 Agreement fails the Statute of Frauds, (4) the Rule 11 agreement lacks a meeting of the minds, and (5) unilateral mistake in communicating the settlement offer prevented proceeding with the settlement.

Rule 11 agreements have long been recognized as "an effective tool for finalizing settlements by objective manifestation so that the agreements 'do not themselves become sources of controversy.'" *Knapp Med. Ctr. v. De La Garza,* 238 S.W.3d 767, 768 (Tex. 2007) (per curiam) (quoting *Kennedy v. Hyde,* 682 S.W.2d 525, 530 (Tex. 1984)). Courts construe Rule 11 Settlement Agreements just as they would any contract. *See Padilla,* 907 S.W.2d at 460; *Trudy's Tex. Star, Inc. v. City of Austin,* 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.).

The intent of the parties to be bound is an essential element of an enforceable contract. *See Foreca, S.A. v. GRD Dev. Co.,* 758 S.W.2d 744, 746 (Tex. 1988); *MKM Eng'rs v. Guzder*, 476 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A Rule 11 Settlement Agreement must contain all the essential terms of the settlement. *Padilla,* 907 S.W.2d at 460. Essential or material terms of a Rule 11 Settlement Agreement include payment terms and release of claims. *Id.* at 460–61; *MKM Eng'rs*, 476 S.W.3d at 778. Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain." *MKM Eng'rs*, 476 S.W.3d at 778.

We must first determine the material and essential terms of the Settlement Agreement. The parties were negotiating the transfer of ownership of Oliver from Blue Angel to Ayars and Tillman. Blue Angel and Ayars and Tillman are not in dispute that they reached an agreement for (1) Ayars and Tillman to pay Blue Angel $6,500, (2) a settlement agreement with mutual releases, confidentiality, and non-disparagement, (3) return of the crate, and (4) non-suit with prejudice with all parties bearing their own attorney's fees. All Blue Angel's arguments are based upon the parties' agreement for an executed Adoption Agreement for Oliver.

There is no dispute that Blue Angel was in agreement to transfer ownership of Oliver to Ayars and Tillman. An executed Adoption Agreement served as the documentation for that transfer. Therefore, the essential terms

of the agreement for the transfer of Oliver included an Adoption Agreement and a payment. *See Padilla,* 907 S.W.2d at 460–61. Ayars and Tillman argue, and we agree, that the settlement agreement contained the material and essential terms for the transfer of Oliver— an executed Adoption Agreement, the payment to Blue Angel, and the release of claims. *See MKM Eng'rs*, 476 S.W.3d at 778.

While the Settlement Agreement referenced an "Executed Adoption Agreement" without providing the specific terms, a binding settlement may exist when parties agree upon some terms, understanding them to be an agreement, and leave other terms to be made later. *Id.*; *Gen. Metal Fabricating Corp. v. Stergiou,* 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Courts have often "enforced settlement agreements that contemplate additional documentation or leave open certain terms for future negotiation." *Stergiou,* 438 S.W.3d at 747–48.

In this case, the agreement specifically stated the parties "are settled on those terms." The terms included an executed Adoption Agreement. A binding settlement may exist when parties agree upon some terms, understanding them to be an agreement, and leave other terms to be made later. *Id.* at 744. Although Austin maintains that she never authorized any form of an Adoption Agreement other than Blue Angel's Standard Adoption Agreement, her correspondence in no way indicates that that term is non-negotiable. There is

no language indicating that the January 17 Settlement Agreement was merely intended as a preliminary, non-binding agreement. *See MKM Eng'rs*, 476 S.W.3d at 779. The January 17 Settlement Agreement was not rendered unenforceable because the parties were to agree on the language of the executed Adoption Agreement at a later time. *See Stergiou,* 438 S.W.3d at 744.

Blue Angel also maintains that the January 17 Settlement Agreement did not satisfy the statute of frauds, citing *Padilla* as authority. 907 S.W.2d at 460. *Padilla* stated that Rule 11 Agreements must be in writing and, in determining what was necessary to satisfy the "in writing" requirement, the Court analogized to the statute of frauds requirement for writings. *Id.* The Court noted that to satisfy the statute of frauds, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Id.* (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)). As previously stated, courts have often "enforced settlement agreements that contemplate additional documentation or leave open certain terms for future negotiation." *Stergiou,* 438 S.W.3d at 747–48. Therefore, we do not agree that the January 17 Settlement Agreement fails to satisfy the statute of frauds.

Blue Angel also argues that the January 17 Settlement Agreement is not enforceable because there was no "meeting of the minds." "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App.— Houston [1st Dist.] 2007, no pet.). As previously stated, there was an agreement regarding the material and essential terms of the contract for the transfer of ownership of Oliver to Ayars and Tillman—an executed Adoption Agreement, the payment to Blue Angel, and the release of claims. Therefore, there was a "meeting of the minds."

Blue Angel finally argues that the January 17 Settlement Agreement should be set aside based upon unilateral mistake. Blue Angel contends that Couch, their original trial counsel, made a mistake in communicating the settlement offer. Austin maintains that she never authorized any Adoption Agreement other that Blue Angel's Standard Adoption Agreement and that she would never have agreed to any modifications of the essential provisions of that standard agreement. According to Austin, she was not aware that Couch had altered the terms of her initial offer to include an executed Adoption Agreement rather than the Blue Angel Standard Adoption Agreement until after the trial court ruled on Ayars's and Tillman's motion to enforce the

agreement. Blue Angel insists that it is entitled to equitable relief because of the mistake in communicating the offer.

Equitable relief will be granted against a unilateral mistake when the conditions of remediable mistake are present. *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,* 160 Tex. 617, 620, 335 S.W.2d 371, 373 (1960). These conditions generally are:

> (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable;
>
> (2) the mistake relates to a material feature of the contract;
>
> (3) the mistake must have been made regardless of the exercise of ordinary care; and
>
> (4) the parties can be placed in status quo in the equity sense, i.e., rescission must not result in prejudice to the other party except for the loss of his bargain.

*Id.*

The attorney-client relationship is an agency relationship. *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986). The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts; the attorney's negligence is attributed to the client. *Id.* Turner, as Blue Angel's corporate counsel, communicated its settlement offer to Couch. Couch, as retained attorney for Blue Angel, had authority to enter into a settlement agreement with Ayars and Tillman. Because Couch was an agent for Blue Angel, her actions were attributable to Blue Angel. *See id.* Turner

was copied on Couch's settlement offer to Ayars and Tillman that required only an executed Adoption Agreement rather than Blue Angel's Standard Adoption Agreement. Turner should have been aware of Couch's offer for an executed Adoption Agreement. There is nothing in the record to suggest that Austin or Turner made clear to Couch that Blue Angel would only agree to Blue Angel's Standard Adoption Agreement. Therefore, we cannot conclude that Blue Angel is entitled to equitable relief based upon unilateral mistake.

We hold that the January 17 Settlement Agreement was a valid and enforceable Rule 11 Agreement. Thus, the trial court did not err by granting Ayars's and Tillman's motion to enforce the agreement and motion for summary judgment. We overrule the first and second issues.

## Issue Three

In the third issue, Blue Angel argues that the trial court erred by awarding appellate attorney's fees that were not contingent on a successful appeal. In both the Order granting Ayars's and Tillman's motion for summary judgment and the Order granting the motion for enforcement of the Rule 11 Agreement, the trial court awarded Ayars and Tillman a specific sum of attorney's fees should (1) any party appeal this ruling to the Court of Appeals, (2) either party file a Petition for Review to the Texas Supreme Court, (3) the Texas Supreme Court request full briefing, and (4) the Texas Supreme Court grant oral arguments. None of the awards were conditioned on Ayars's and

Tillman's success on appeal. Ayars and Tillman concede that the trial court's award of appellate attorney's fees should be contingent on success on appeal.

Appellate attorney's fees must be predicated on success in the appellate process because a party may not be penalized for successfully appealing. *Spiller v. Spiller*, 901 S.W.2d 553, 560 (Tex. App.—San Antonio 1995, writ denied) (citing *King Optical v. Automatic Data Processing of Dallas, Inc.*, 542 S.W.2d 213, 218 (Tex. Civ. App.—Waco 1976, writ ref'd n.r.e.)). Therefore, it is implicit in a court's judgment that the award of appellate attorney's fees is conditioned on a successful appeal. *Id.* Although the trial court's award of attorney's fees before us does not condition the award of attorney's fees on appeal, we conclude that the award implicitly requires success in order to recover the attorney's fees. *See id.* We find no error in the trial court's award of appellate attorney's fees and overrule Blue Angel's third issue.

## Conclusion

We affirm the trial court's order.

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: May 1, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

