In The

 Court of Appeals
 Ninth District of Texas at Beaumont
 __________________

 NO. 09-18-00122-CV
 __________________

 AMERIGAS PROPANE, L.P., Appellant

 V.

 JOSE FRANCISCO ABOYTES-MUÑIZ, ANDY
 MEDINA-CARDENAS AND BERNABE BUSTILLO-RIVERA, Appellees

 On Appeal from the 284th District Court
 Montgomery County, Texas
 Trial Cause No. 15-09-09003-CV

 MEMORANDUM OPINION

 This is a permissive appeal of a grant of a partial no-evidence motion for

summary judgment and the denial of a traditional motion for summary judgment in

a lawsuit concerning a workplace injury. The Appellees allege that they were injured

at AmeriGas Propane, L.P.’s (AmeriGas or Defendant) propane-filling facility in

Conroe, Texas. This Court previously entered an order accepting the permissive

 1
appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d), (f) (West Supp. 2018).1

We reverse and remand.

 Background

Underlying Facts

 The record before us indicates that AmeriGas Propane, L.P. is a limited

partnership organized in Delaware. AmeriGas Propane, Inc. (AG Inc.) is the general

partner of AmeriGas Propane, L.P. AmeriGas Propane, L.P. is a subsidiary of UGI

Corporation (UGI).

 According to the record before us, Defendant AmeriGas Propane, L.P. owns

and operates the “AmeriGas Cylinder Exchange” facility in Conroe, Texas, where,

as AmeriGas explains, empty propane tanks are delivered, cleaned, refilled with

propane, and redistributed for sale. On November 6, 2012, while workers at the

AmeriGas Cylinder Exchange were refilling the tanks, gas escaped, ignited, and

caused a fire. Several of the workers, including Roberto Cabrera (Roberto), Jose

Francisco Aboytes-Muñiz (Jose), Andy Medina-Cardenas (Andy), and Bernabe

Bustillo Rivera (Bernabe) allege they sustained injuries from the accident.

 1
 We cite to current statutes herein unless subsequent amendments affect our
disposition.

 2
 In August of 2015, Roberto filed an original petition against defendant

AmeriGas Propane, L.P., alleging that he was injured at the AmeriGas facility and

asserting tort claims against AmeriGas. Appellant and Appellees state in their briefs

that AmeriGas Propane, L.P. and Roberto settled and therefore Roberto is not a party

to this appeal. We discuss any other facts relating to Roberto herein only as necessary

to the issues on appeal.

 In September of 2015, Jose, Andy, and Bernabe (collectively “Intervenors”)

filed petitions in intervention in Roberto’s lawsuit against AmeriGas. In their

petitions, Intervenors alleged claims against AmeriGas for premises liability,

negligence, and gross negligence arising out of the accident. AmeriGas filed an

answer and asserted a general denial and affirmative defenses of statute of

limitations and exclusive remedy under the Texas Workers’ Compensation Act

(TWCA).

No-Evidence Motion for Summary Judgment

 In 2016, Roberto filed a no-evidence motion for partial summary judgment,

which was joined by the Intervenors, in which Roberto and the Intervenors argued

that “[t]here is no evidence that AmeriGas Propane, L.P., was a named insured

subscriber to a policy of workers’ compensation insurance at the time of the incident

made the basis of this suit.” AmeriGas filed a response and a counter-motion for

 3
summary judgment as to Roberto only. AmeriGas explained in its response that it is

a subsidiary of the parent corporation UGI, which operates various energy and

utilities businesses. AmeriGas alleged that UGI’s domestic propane business is

conducted through AmeriGas, and that AmeriGas’s general partner is AG Inc.

According to AmeriGas, it is the operating partnership and holds title to the real

property involved in the accident at issue in this lawsuit. But, AG Inc. manages

AmeriGas’s operations and payroll and executes contracts on behalf of AmeriGas.

According to AmeriGas, it can only act through AG Inc., its general partner.

 AmeriGas argued that it was insured under a workers’ compensation policy

obtained by UGI and issued by ACE Indemnity Insurance Company of North

America (ACE), policy number C46784583, and the policy did not specifically name

AmeriGas as a named insured due only to an administrative error. AmeriGas further

argued that it paid insurance premiums on policy C46784583, that an endorsement

was issued at a later date naming AmeriGas as a named insured on policy

C46784583 in order to correct the administrative error, and that AmeriGas had paid

and Roberto had accepted over $500,000 in workers’ compensation benefits under

policy C46784583. AmeriGas supported its response and counter-motion with

affidavits and documents.

 4
 Intervenors filed a reply in which they argued that policy C46784583 named

UGI Corporation and AmeriGas Propane, Inc., but not AmeriGas Propane, L.P.

Intervenors also argued that the endorsement that was added to the UGI policy in

2016 was an attempt to “retroactively change the policy” three years after the policy

had expired. The Intervenors attached an affidavit from Brad McClellan, an attorney

who is board certified in workers’ compensation law, who opined that the mutual

mistake argument and the retroactive revision to the UGI policy should not be

allowed. The trial court entered an Order dated November 28, 2017, granting

Plaintiff and Intervenors’ partial no-evidence motion for summary judgment and

denying AmeriGas’s counter-motion for traditional summary judgment as to

Roberto.

AmeriGas’s Traditional Motion for Summary Judgment as to Intervenors

 Thereafter, AmeriGas filed a traditional motion for summary judgment on the

Intervenors’ claims, which incorporated by reference evidence and pleadings

previously submitted with its response to the partial summary judgment and counter-

motion against Roberto. AmeriGas argued that, at the time of the incident,

Intervenors were employed by F.W. Services, Inc., which was doing business as

Pacesetter Personnel Services (Pacesetter). According to AmeriGas, Pacesetter had

a workers’ compensation policy that covered the Intervenors, and the policy

 5
contained an “Alternate Employer Endorsement” that states that workers’

compensation “will apply as though the alternate employer is insured.” AmeriGas

also argued it had workers’ compensation coverage through its own insurer at the

time of the incident. AmeriGas attached additional affidavits and documents as

evidence of coverage under its own policy, including a certificate of insurance,

information from the underwriting file, and AmeriGas’s payroll data used to

determine premiums.

 Jose filed a response to AmeriGas’s motion for summary judgment in which

he argued that AmeriGas cannot claim coverage under Pacesetter’s workers’

compensation policy because Pacesetter and AmeriGas did not execute a written

staff leasing contract and the Alternate Employer Endorsement does not name or

refer to AmeriGas. Jose also argued that AmeriGas’s motion for summary judgment

merely restated the same arguments and presented the same evidence that the trial

court had already considered and rejected. Jose asserted that “[i]t is undisputed that

AmeriGas Propane, L.P. was not listed as a named insured on a workers’

compensation policy at the time these workers were injured[]” as required by law.

 Andy and Bernabe also filed a joint response to AmeriGas’s motion for

summary judgment. Therein, Andy and Bernabe argued that the question whether

AmeriGas had workers’ compensation insurance at the time of the incident had

 6
already been decided in the Intervenors’ favor. Andy and Bernabe also argued that

any evidence concerning Pacesetter’s workers’ compensation policy was untimely

filed and should be excluded. The Intervenors argued that the Alternate Employer

Endorsement in Pacesetter’s policy does not apply to AmeriGas by its plain terms

because there was no evidence of a staff leasing services agreement between

Pacesetter and AmeriGas, and there was no evidence that Pacesetter held a staff

leasing license.

 AmeriGas contends that the Intervenors were employees of Pacesetter and

borrowed servants of AmeriGas. In contrast, the Intervenors collectively argue that

they were hired by Pacesetter but sent to the AmeriGas facility where they worked

as “long-term employees” of AmeriGas. AmeriGas further contends that it was the

Intervenors’ “alternate employer[]” and that it supervised the Intervenors, controlled

the details of their work, and owned the premises and equipment where the work

was performed.

 In his response to AmeriGas’s motion for summary judgment, Jose agreed

that AmeriGas supervised and controlled the work site and his work but Jose argued

he was a “long-term employee” of AmeriGas. Jose testified in his deposition that he

was employed by Pacesetter but AmeriGas employees were his bosses. In his

amended petition, he alleged that “[a]t all times material to this case, AmeriGas

 7
Propane, L.P., employed [Jose] to work at a liquid propane cylinder filling facility

in Conroe, Montgomery County, Texas.”

 In their response to AmeriGas’s motion for summary judgment, Andy and

Bernabe argued that their continuous employment for about half a decade at the

AmeriGas facility reflected that their employment was “long-term or continuing”

and not “temporary.” In his deposition, Andy testified that his paychecks came from

Pacesetter, but he received them at the AmeriGas offices and he had never been to

Pacesetter’s office. Bernabe testified that he worked at AmeriGas about six years

before the accident and that he did not know who Pacesetter was.

 Mark Birenbaum, Vice President of the Payroll Division for Pacesetter,

attested in his affidavit that Pacesetter’s records show that Andy and Bernabe were

hired by Pacesetter and assigned to work at AmeriGas in Conroe. Birenbaum also

stated that when Pacesetter’s employees are employed at third-party facilities, the

third-party client directs, controls, and supervises the work. Steven Richard,

Operations Manager for AmeriGas in Conroe, attested in his affidavit that he

supervised the activities of Andy and Bernabe at the time of the incident.

Order Denying AmeriGas’s Motion for Summary Judgment and Granting
Permissive Appeal

 AmeriGas filed a motion for reconsideration of the trial court’s November 28,

2017 order granting Roberto’s and the Intervenors’ no-evidence motion for partial

 8
summary judgment and, as an alternative, a motion to amend the order dated

November 28, 2017, to certify the question for interlocutory appeal. In March of

2018, the trial court signed an order denying AmeriGas’s traditional motion for

summary judgment, denying AmeriGas’s motion for reconsideration as to the grant

of the partial summary judgment filed by the Intervenor, and amending the

November 28, 2017 order to allow for an interlocutory appeal. The trial court then

granted an interlocutory appeal and identified the following controlling questions of

law for appeal:

 Whether AmeriGas Propane, L.P., was an insured on November 6,
 2012, under the workers’ compensation policy issued to FW Services,
 Inc., and is therefore entitled to assert the exclusive remedy provision
 of the Texas Worker s’ Compensation Act[; and]

 ....

 Whether AmeriGas Propane, L.P., was an insured on November 6,
 2012, under the workers’ compensation policy issued to UGI
 Corporation and is therefore entitled to assert the exclusive remedy
 provision of the Texas Workers’ Compensation Act.

The trial court further stated:

 The basis for the court’s rulings herein is that defendant has offered no
 evidence that it was covered under a policy of workers’ compensation
 insurance on the date the intervenors were injured, and therefore,
 defendant is not entitled to assert the exclusive remedy defense of the
 Texas Workers’ Compensation Act.

 9
 Standard of Review

 Unless a statute specifically authorizes an interlocutory appeal, appellate

courts have jurisdiction only over final judgments. Cherokee Water Co. v. Ross, 698

S.W.2d 363, 365 (Tex. 1985). Generally, a party may not appeal from a trial court’s

denial of a motion for summary judgment or grant of a partial summary judgment

because such rulings do not constitute a final judgment. Frias v. Atl. Richfield Co.,

999 S.W.2d 97, 101 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Section

51.014 of the Texas Civil Practice and Remedies Code designates civil orders that

may be appealed on an interlocutory basis, and it is strictly construed. See Tex. Civ.

Prac. & Rem. Code Ann. § 51.014; Bally Total Fitness Corp. v. Jackson, 53 S.W.3d

352, 355 (Tex. 2001). Section 51.014(d) permits an interlocutory appeal of an

otherwise unappealable order, including the denial of a summary judgment motion,

upon the trial court’s certification of the statutory requirements, that is, the order

involves a controlling question of law on which there is substantial ground for

disagreement and an immediate appeal may materially advance the ultimate

resolution of the case. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d). A court

of appeals has discretion to accept or refuse to hear a permissive appeal. Id.

§ 51.014(f). This Court previously entered an order accepting the permissive appeal,

and we have jurisdiction over this appeal pursuant to Texas Civil Practice and

 10
Remedies Code sections 51.014(d) and 51.014(f). The scope of the permissive

appeal is limited to consideration of the controlling issues identified in the trial

court’s order. See Tex. Windstorm Ins. Ass’n v. Jones, 512 S.W.3d 545, 552 (Tex.

App.—Houston [1st Dist.] 2016, no pet.) (citing CMH Homes v. Perez, 340 S.W.3d

444, 447 (Tex. 2011)).

 We review a summary judgment de novo. See HCBeck, Ltd. v. Rice, 284

S.W.3d 349, 352 (Tex. 2009) (citing Valence Operating Co. v. Dorsett, 164 S.W.3d

656, 661 (Tex. 2005)); Mid-Century Ins. Co. v. Ademaj, 243 S.W.3d 618, 621 (Tex.

2007). When we review a traditional summary judgment, we determine whether the

defendant conclusively disproved an element of the plaintiff’s claim or conclusively

proved every element of an affirmative defense. Am. Tobacco Co. v. Grinnell, 951

S.W.2d 420, 425 (Tex. 1997); Smith v. Deneve, 285 S.W.3d 904, 909 (Tex. App.—

Dallas 2009, no pet.); see also Tex. R. Civ. P. 166a(c). We take evidence favorable

to the nonmovant in a motion for summary judgment as true, and we indulge every

reasonable inference and resolve every doubt in favor of the nonmovant. Sysco Food

Servs., Inc. v. Trapnell, 890 S.W.2d 796, 800 (Tex. 1994). The trial court may

consider all competent evidence on file at the time of the summary judgment hearing.

See Tex. R. Civ. P. 166a; Lance v. Robinson, 543 S.W.3d 723, 732 (Tex. 2018)

(explaining that a trial court does not err by relying on summary judgment evidence

 11
on file prior to the summary judgment hearing even though filed prior to the instant

summary judgment record).2

 A partial summary judgment is interlocutory and becomes final upon

disposition of the other issues in the case. See Hyundai Motor Co. v. Alvarado, 892

S.W.2d 853, 855 (Tex. 1995); Chase Manhattan Bank, N.A. v. Lindsay, 787 S.W.2d

51, 53 (Tex. 1990). A trial court has the inherent right to change or modify any

interlocutory order or judgment until the judgment on the merits of the case becomes

final. Flagstar Bank, FSB v. Walker, 451 S.W.3d 490, 504 (Tex. App.—Dallas 2014,

no pet.). Accordingly, a trial court may, in the exercise of discretion, properly grant

summary judgment after having previously denied summary judgment without a

motion by or prior notice to the parties as long as the court retains jurisdiction over

the case. See H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872, 877 (Tex. App.—

Corpus Christi 1996, writ denied); see also Woods MFI, LLC v. PlainsCapital Bank,

 2
 See also, e.g., Kastner v. Jenkens & Gilchrist, P.C., 231 S.W.3d 571, 581
(Tex. App.—Dallas 2007, no pet.) (noting that the rules “do not require that
summary judgment evidence be physically attached to the motion[]”); R.I.O. Sys.,
Inc. v. Union Carbide Corp., 780 S.W.2d 489, 492 (Tex. App.—Corpus Christi
1989, writ denied) (holding evidence on file prior to the summary judgment hearing,
including documents attached to an earlier motion for summary judgment, were
proper summary judgment evidence); Vaughn v. Burroughs Corp., 705 S.W.2d 246,
248 (Tex. App.—Houston [14th Dist.] 1986, no writ) (same); Dousson v. Disch, 629
S.W.2d 111, 112 (Tex. App.—Dallas 1981, writ dism’d w.o.j.) (holding documents
filed four months before summary judgment motion were proper summary judgment
evidence).

 12
No. 14-15-00655-CV, 2016 Tex. App. LEXIS 11785, at *35 (Tex. App.—Houston

[14th Dist.] Nov. 1, 2016, pet. denied) (mem. op.) (explaining that an interlocutory

summary judgment order may be reconsidered at any time, even without notice to

the parties).

 Texas Workers’ Compensation Act

 The TWCA permits a subscribing employer’s injured employee to recover

benefits for work-related injuries on a no-fault basis. See Tex. Lab. Code Ann.

§ 406.031 (West 2015). The TWCA was intended to benefit both employees and

employers. See Port Elevator-Brownsville, L.L.C. v. Casados, 358 S.W.3d 238, 241

(Tex. 2012).

 The [TWCA] was adopted to provide prompt remuneration to
 employees who sustain injuries in the course and scope of their
 employment. . . . The act relieves employees of the burden of proving
 their employer’s negligence, and instead provides timely compensation
 for injuries sustained on-the-job. . . . In exchange for this prompt
 recovery, the act prohibits an employee from seeking common-law
 remedies from his employer, as well as his employer’s agents, servants,
 and employees, for personal injuries sustained in the course and scope
 of his employment.

Wingfoot Enters. v. Alvarado, 111 S.W.3d 134, 142 (Tex. 2003) (quoting Hughes

Wood Prods., Inc. v. Wagner, 18 S.W.3d 202, 206-07 (Tex. 2000) (citations

omitted)). Courts “construe the TWCA liberally in favor of coverage as a means of

 13
affording employees the protections the Legislature created.” Casados, 358 S.W.3d

at 241.

 “Recovery of workers’ compensation benefits is the exclusive remedy of an

employee covered by workers’ compensation insurance coverage . . . against the

employer . . . for . . . a work-related injury sustained by the employee.” Tex. Lab.

Code Ann. § 408.001(a) (West 2015). To establish entitlement to a summary

judgment on the affirmative defense of the workers’ compensation exclusive

remedy, a defendant must prove that at the time of the work-related injury (1) the

injured worker was an employee or borrowed servant of the defendant; and (2) the

defendant had workers’ compensation insurance at the time of the accident. See

Garza v. Exel Logistics, Inc., 161 S.W.3d 473, 475-77 (Tex. 2005); Warnke v.

Nabors Drilling USA, L.P., 358 S.W.3d 338, 343 (Tex. App.—Houston [1st Dist.]

2011, no pet.) (op. on reh’g).

 Were the Intervenors “Employees” of AmeriGas under the TWCA?

 The evidence shows that Pacesetter hired Intervenors and assigned them to

work at the AmeriGas facility for AmeriGas, but AmeriGas controlled the details of

the work performed by Intervenors at the AmeriGas Facility. By the express terms

of the employment agreements between Intervenors and Pacesetter, the Intervenors

were informed that “[t]he entity to which you are assigned is able to direct and

 14
control your activities that happen at the work site.” The Intervenors stated in their

pleadings that they were AmeriGas’s employees:

 At all times material to this case, AmeriGas Propane, L.P.[] employed
 [Intervenors] [Andy] and [Bernabe] to work at a liquid propane cylinder
 filling facility in Conroe, Montgomery County, Texas. . . . As
 employees of AmeriGas, [Andy] and [Bernabe] were invitees on the
 AmeriGas premises.

 At all times material to this case, AmeriGas Propane, L.P.
 employed [Intervenor] [Jose] to work at a liquid propane cylinder filling
 facility in Conroe, Montgomery County, Texas. . . . As an employee of
 AmeriGas, [Jose] was an invitee on the AmeriGas premises.

 Under the TWCA, an employee may have more than one employer, and each

employer who subscribes to workers’ compensation insurance may raise the

exclusive remedy provision as a bar to the employee’s claims. See Casados, 358

S.W.3d at 242; Alvarado, 111 S.W.3d at 140. If an employee of a staffing agency is

injured while working under a client company’s direct supervision, the employee

can pursue workers’ compensation benefits from either the staffing agency or the

client company—and be subject to the exclusive remedy provision as to both—if

each provided coverage. See Mosqueda v. G & H Diversified Mfg., Inc., 223 S.W.3d

571, 582 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); see also Garza, 161

S.W.3d at 475.

 We conclude that there is no disputed material issue of fact concerning

whether AmeriGas was an employer of the Intervenors under the TWCA. Even after

 15
considering the undisputed evidence in a light most favorable to the nonmovants,

the evidence established that AmeriGas had the right to control the Intervenors’

work. See Garza, 161 S.W.3d at 477; Trapnell, 890 S.W.2d at 800. Not only did the

Intervenors not dispute AmeriGas’s evidence pertaining to control by AmeriGas, but

also, they admitted in their pleadings they were employees of AmeriGas.

Consequently, the Intervenors were “employees” of AmeriGas for purposes of the

TWCA. See Alvarado, 111 S.W.3d at 141.

 Did AmeriGas Have Coverage Under a Workers’ Compensation Policy
 at the Time of the Accident?

 To be entitled to the TWCA exclusive remedy defense AmeriGas must also

prove it had workers’ compensation coverage at the time of the incident. See Tex.

Lab. Code Ann. § 408.001(a); Garza, 161 S.W.3d at 475. In its motion for summary

judgment, AmeriGas argued that it was covered by the Pacesetter workers’

compensation policy under the “Alternate Employer Endorsement” in the Pacesetter

Policy. AmeriGas also argued that it had coverage under the UGI workers’

compensation policy.

 AmeriGas admitted that the UGI policy did not list AmeriGas Propane, L.P.

as a named insured but argued the failure to list AmeriGas Propane, L.P. was due to

a mistake or an “administrative error” by the insurer, and AmeriGas was

inadvertently omitted as a named insured on the policy document. The UGI policy

 16
AmeriGas submitted with its counter-motion against Plaintiff and incorporated into

the traditional motion by reference, specifically named “UGI Corporation” and

“AmeriGas Propane, Inc.” as named insureds. AmeriGas also argued in its cross-

motion for summary judgment that “Roberto [] and three Intervenors . . . combined,

have collected approximately one million dollars in workers’ compensation

benefits” as a result of the fire.

 Was AmeriGas an Insured on November 6, 2012, Under the Workers’
Compensation Policy Issued to UGI and AmeriGas Inc., and Therefore Entitled to
 Assert the Exclusive Remedy Provision of the TWCA?

 Intervenors’ argue that, as a matter of law, there is no evidence that coverage

existed for AmeriGas under the UGI policy at the time of the injury. Intervenors

contend that, in determining whether coverage exists, “[a] court is limited to the

four-corners of the document, unless the document is ambiguous.” The Intervenors

assert that the UGI policy unambiguously does not list AmeriGas as a name insured.

AmeriGas argues that a defendant may prove coverage under a workers’

compensation policy with affidavits of coverage from an insurer, or a certificate of

insurance, or an affidavit from the defendant itself. See, e.g., Guevara v. WCA Waste

Corp. of Tex., L.P., No. 01-15-01075-CV, 2017 Tex. App. LEXIS 3650, at **12-14

(Tex. App.—Houston [1st Dist.] Apr. 25, 2017, pet. dism’d) (mem. op.) (explaining

that the parties “were not required to produce the actual policy to prove [the

 17
employer] had coverage; they were permitted to prove [] subscriber status with other

evidence, such as affidavits[]”); Warnke, 358 S.W.3d at 344 (concluding that an

affidavit from an insurance carrier’s managing director attesting to coverage

satisfied the employer’s burden to demonstrate subscriber status). AmeriGas argues

that the omission of AmeriGas’s name from the UGI policy was the result of a

mistake or an administrative error, and that AmeriGas provided uncontroverted

evidence that established as a matter of law it had coverage under the UGI policy,

or alternatively they presented some evidence that would create a fact issue as to

whether they had coverage under the UGI policy.

 Generally, parol evidence is inadmissible to vary or contradict the terms of an

unambiguous instrument. Dyer v. Cotton, 333 S.W.3d 703, 718 (Tex. App.—

Houston [1st Dist.] 2010, no pet.). However, parol evidence is admissible to

demonstrate that, through fraud, accident, or mutual mistake, the instrument does

not reflect the parties’ true intentions. See Williams v. Glash, 789 S.W.2d 261, 264

(Tex. 1990); Atlantic Lloyds Ins. Co. of Tex. v. Butler, 137 S.W.3d 199, 212-13 (Tex.

App.—Houston [1st Dist.] 2004, pet. denied); Marcuz v. Marcuz, 857 S.W.2d 623,

627 (Tex. App.—Houston [1st Dist.] 1993, no writ). A mutual mistake occurs when

the parties to an agreement have a common intention, but the written contract does

not reflect that intent. Marcuz, 857 S.W.2d at 627; Goff v. Southmost Sav. & Loan

 18
Ass’n, 758 S.W.2d 822, 826 (Tex. App.—Corpus Christi 1988, writ denied). To

prove mutual mistake, a party must show (1) the parties’ true agreement, and (2) that

the instrument incorrectly reflects that agreement because of a mutual mistake.

Butler, 137 S.W.3d at 213.

 In this case, AmeriGas submitted evidence that ACE, UGI, and AmeriGas

intended that AmeriGas be covered by the UGI policy at the time the policy was

issued. Thomas Groves, Vice President and underwriter at ACE, attested that the

UGI policy in effect on November 6, 2012, was intended to include AmeriGas as an

insured along with UGI and AG Inc., and that the only reason AmeriGas was not

specifically listed as a named insured on the policy was due to an administrative

error on the part of ACE. In his deposition, Groves testified that in his review of the

underwriting file, he saw combined payroll submission data for “AmeriGas” that

was not split out for the various AmeriGas entities—AmeriGas Propane, Inc.,

AmeriGas Propane, L.P., and AmeriGas Partners, L.P. According to Groves, the

UGI policy was priced to include “all entities of AmeriGas[]” and the policy should

have provided workers’ compensation coverage to AmeriGas. Groves testified that

the endorsement executed in 2016 was intended to correct the mistake because the

underwriting file reflected that AmeriGas should have been included in the 2012

policy. Groves also testified that the policy was priced and rated to include

 19
AmeriGas and that AmeriGas had paid a premium to ACE for workers’

compensation coverage for July of 2012 to July of 2013. AmeriGas also submitted

a copy of a “Policy Information Page Endorsement” for the UGI policy that was

executed in 2016, which stated a policy period of “07-01-2012 to 07-01-2013[,]”

and named “AmeriGas Propane, L.P.” as an insured.

 AmeriGas submitted an affidavit by Paul Monaco, Risk Manager for UGI,

wherein he attested that the UGI policy in effect on November 6, 2012, provided

workers’ compensation coverage to AmeriGas. In his deposition, Monaco testified

that the UGI policy was intended “to provide total protection for all employees of

AmeriGas Propane.”

 An affidavit and deposition transcript of Kathleen McGlynn, Manager of Risk

and Corporate Insurance at UGI, was also submitted by AmeriGas. McGlynn stated

that AmeriGas had paid premiums to Marsh USA, Inc. for workers’ compensation

insurance for the period July 1, 2012 through July 1, 2013, and she testified that

Marsh was the broker that negotiated the policy terms. McGlynn identified certain

documents as records of premiums paid for this policy period, and these documents

were also submitted as summary judgment evidence.

 AmeriGas argues that “[a]ll injured parties applied for and promptly received

workers’ compensation benefits.” However, AmeriGas does not cite to evidence in

 20
the record of payments it made to the Intervenors. In its counter-motion for summary

judgment against Plaintiff Roberto Cabrera, which is incorporated by reference in

its motion for summary judgment against the Intervenors, AmeriGas alleged that it

had paid benefits to Roberto under the UGI workers’ compensation policy. Paul

Monaco attested that Roberto had received workers’ compensation benefits under

the UGI policy arising out of his on-the-job injury on November 6, 2012. In his

deposition, Monaco testified that “we have paid out over $400,000 in benefits[]” to

Roberto for the injury he sustained.

 Kathleen McGlynn stated in her affidavit that AmeriGas had paid over

$400,000 in medical and indemnity benefits to Roberto under the UGI policy, and

that AmeriGas contracted with Sedgwick Claims Management Services, Inc.

(Sedgwick) to serve as its third-party administrator on the UGI worker’s

compensation policy. Attached to McGlynn’s affidavit were copies of Sedgwick

invoices to AmeriGas for payments made to Roberto, bank wire transfer

authorizations from AmeriGas to Sedgwick, and bank wire transfer transactions

from AmeriGas to Sedgwick. McGlynn attested that, pursuant to the workers’

compensation policy, AmeriGas had a $500,000 deductible. In her deposition,

McGlynn identified an exhibit as invoices for payments made on behalf of AmeriGas

by Sedgwick, and one page showed a total of “982,274.64[,]” Roberto’s name, and

 21
the other names were redacted. An invoice from Sedgwick to AmeriGas for the

Activity Period of November 2012 noted “OK to pay[,]” and the invoice total of

“$982,274.64[,]” exceeds the deductible amount of $500,000. McGlynn also

identified another exhibit as an internal corporate insurance document that allocated

invoice amounts dated “12/3/2012” for AmeriGas by line of business and insurance

type and reflected a total of $982,274.64. In addition, McGlynn identified another

exhibit as a bank statement showing the wire transfer in the amount of $982,274.64

paid from the AmeriGas bank account to Sedgwick. The exhibit included copies of

other bank transfers from AmeriGas to Sedgwick, including one for $1,249,570.54

dated May 21, 2013.

 The Intervenors did not dispute the evidence of workers’ compensation

payments being made under the UGI policy to Roberto, nor did the Intervenors deny

that they had also applied for and received workers’ compensation benefits under a

policy. What remains unclear based on the record before us is whether Intervenors

applied for and received workers’ compensation payments from the UGI policy or

the Pacesetter policy. That said, the record includes undisputed evidence of

payments made under UGI’s workers’ compensation policy to Roberto for injuries

he sustained on November 6, 2012 at AmeriGas’s facility and total payments have

been made exceeding the policy deductible. Evidence of these payments provides

 22
undisputed evidence that the UGI workers’ compensation policy provided workers’

compensation coverage for AmeriGas even though AmeriGas was not specifically

named as an insured on the original policy. Cf. Haws & Garrett Gen. Contractors,

Inc., v. Gorbett Bros. Welding Co., Inc., 480 S.W.2d 607, 609 (Tex. 1972) (the

parties’ agreement may be “implied from and evidenced by their conduct and course

of dealing[]”); Se. Tex. Homecare Specialists, Inc. v. Triangle Billing, Inc., 43

S.W.3d 106, 110 (Tex. App.—Beaumont 2001, no pet.) (“[A] party’s intent may be

inferred from his subsequent acts.”); Restatement (Second) of Contracts § 202(4)

(Am. Law Inst. 1981) (“Where an agreement involves repeated occasions for

performance by either party with knowledge of the nature of the performance and

opportunity for objection to it by the other, any course of performance accepted or

acquiesced in without objection is given great weight in the interpretation of the

agreement.”).

 In addition to evidence of workers’ compensation benefits having been paid

to Roberto under the UGI policy, the record also includes undisputed evidence that

ACE, UGI, and AmeriGas intended that AmeriGas be covered under UGI’s

corporate workers’ compensation policy, that AmeriGas was not listed as a named

insured due to an administrative error, that the policy was priced and rated to include

AmeriGas, that AmeriGas paid premiums for coverage under the policy, and that

 23
after the administrative error was discovered in this litigation, an endorsement was

executed in accordance with the original underwriting file to correct the error. On

this record, we conclude that AmeriGas’s summary judgment evidence reflects that

the parties’ true agreement was to cover AmeriGas as an insured, but that due to a

mutual mistake, the policy document did not reflect the parties’ true intent. See

Butler, 137 S.W.3d at 213; Goff, 758 S.W.2d at 826 (concluding that where lending

institution’s name was inadvertently typed in the space for the borrower’s name, the

mistake was in the expression of the contract and parol evidence was admissible to

prove the parties’ intent). The parties to the UGI insurance contract agreed:

AmeriGas, UGI, and ACE had a contract in which ACE provided workers’

compensation coverage to AmeriGas at the time of incident forming the basis of

Intervenors’ claims. See First Bank v. Brumitt, 519 S.W.3d 95, 99 (Tex. 2017) (“only

‘the parties to an agreement determine its terms’”) (quoting Royston, Rayzor,

Vickery, & Williams, LLP v. Lopez, 467 S.W.3d 494, 503-04 (Tex. 2015)); Trahan

v. Premcor Ref. Grp. Inc., No. 09-17-00005-CV, 2018 Tex. App. LEXIS 6493, at

*14 (Tex. App.—Beaumont Aug. 16, 2018, pet. denied) (mem. op.).3

 3
 “A ‘scrivener’s failure to embody the true agreement of the parties in a
written instrument’ provides grounds for the equitable remedy of ‘reformation on
the basis of mutual mistake.’” Samson Expl., LLC v. T.S. Reed Props., Inc., 521
S.W.3d 766, 779 (Tex. 2017) (quoting Gail v. Berry, 343 S.W.3d 520, 524 (Tex.
App.—Eastland 2011, pet. denied)). “[R]eformation requires two elements: (1) an

 24
 Once AmeriGas provided such evidence as outlined above regarding the UGI

policy, the burden shifted to the Intervenors to disprove or raise an issue of fact as

to at least one element of AmeriGas’s defense. See Trahan, 2018 Tex. App. LEXIS

6493, at *8 (citing Amedisys, Inc. v. Kingwood Home Health Care, LLC, 437 S.W.3d

507, 511 (Tex. 2014)). Here, the Intervenors did not dispute the evidence AmeriGas

submitted. The uncontradicted evidence included payroll and employment

information, testimony and documentation showing AmeriGas paid premiums for

such coverage, and documents and testimony establishing that Roberto’s claims

were administered and paid under the UGI policy. The Intervenors failed to disprove

or raise a fact issue as to at least one element of the defense raised by AmeriGas and,

therefore Intervenors failed to carry their burden of proof once the burden shifted to

them. See id. at *12.

 We conclude that, as a matter of law, AmeriGas was covered by a workers’

compensation policy and AmeriGas was the Intervenors’ employer for purposes of

the TWCA. See id. at **12-17 (concluding that undisputed evidence of submission

of payroll and employment information, payment of premiums, and payment and

receipt of workers’ compensation established coverage under the TWCA and barred

original agreement and (2) a mutual mistake, made after the original agreement, in
reducing the original agreement to writing.” Cherokee Water Co. v. Forderhause,
741 S.W.2d 377, 379 (Tex. 1987) (emphasis omitted).

 25
an employee’s negligence claims). Therefore, AmeriGas is entitled to assert the

TWCA’s exclusive-remedy defense. See Garza, 161 S.W.3d at 475-77; Trahan,

2018 Tex. App. LEXIS 6493, at **15-16.

 Because we have concluded that the summary judgment evidence supports a

conclusion that on November 6, 2012, AmeriGas was an insured under the workers’

compensation policy issued to UGI Corporation, we need not determine whether

AmeriGas was also an “alternate employer” and entitled to coverage under F.W.

Services, Inc.’s policy because determination of the latter issue would not result in

any greater relief. See Ho v. Johnson, No. 09-15-00077-CV, 2016 Tex. App. LEXIS

1668, at *46 (Tex. App.—Beaumont Feb. 18, 2016, pet. denied) (mem. op.) (citing

Christus Health Se. Tex. v. Licatino, 352 S.W.3d 556, 563 (Tex. App.—Beaumont

2011, no pet.)); Davis v. Motiva Enters., L.L.C., No. 09-14-00434-CV, 2015 Tex.

App. LEXIS 3235, at **14-15 (Tex. App.—Beaumont Apr. 2, 2015, pet. denied)

(mem. op.); see also Tex. R. App. P. 47.1.

 Accordingly, we reverse and remand to the trial court for further proceedings

consistent herewith.

 REVERSED AND REMANDED.

 _________________________
 LEANNE JOHNSON
 Justice

 26
Submitted on August 8, 2018
Opinion Delivered May 16, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.

 27