**Luciano Angelo MARCUZ, Appellant,**

v.

**Audrey Francis MARCUZ, Appellee.**

**No. 01–91–00313–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 6, 1993.

Darryl W. Malone, Houston, for appellant.

Gray & Moore, Imogen S. Papadopoulos, Roy W. Moore, Pamela E. George, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and DUGGAN and MIRABAL, JJ.

## OPINION

DUGGAN, Justice.

Luciano Angelo Marcuz appeals from the trial court's judgment that partitioned five shares of JTM Industries, Inc. stock between him and his ex-wife, Audrey Marcuz, and awarded Audrey $451,051.15 as her portion of the now liquidated shares.

On March 3, 1986, Luciano and Audrey executed a property settlement agreement in the courthouse just minutes prior to their scheduled divorce trial. Their case was then heard, a no fault decree was rendered, and the decree was signed March 4, 1986.

On April 25, 1988, Audrey filed suit against Luciano for post-divorce partition of omitted property. Audrey alleged that five shares of the JTM stock had not been awarded to either party by the divorce decree or the agreement incident to divorce. Although the couple owned 29 shares of JTM stock, the property agreement incident to divorce specified that Luciano would receive 24 shares. As such, Audrey sought either a partition of the remaining five shares, or alternatively, that five or 17 shares be awarded to her under the provision of the agreement incident to divorce entitled "Division of Assets and Liabilities Not Provided For in Decree."

Luciano answered by general denial and asserted the following affirmative defenses: 1) both parties intended that as his share of the community estate Luciano would receive all 29 shares of JTM stock and Audrey would receive alimony for her interest in the shares; 2) the failure, if any, of the written document to award specifically all 29 shares of JTM stock to Luciano was due to the mutual mistake and/or inadvertence of the parties, their attorneys, and/or the scriveners or typists of the written agreement; 3) limitations; 4) estoppel; and 5) laches.

By countersuit, Luciano sought the reformation of the written agreement to award all 29 shares of the JTM stock to him based on: 1) the failure of the written agreement to carry out the intent of the parties to do so; and 2) the inadvertence,

negligence, and/or mutual mistake of the parties, their attorneys, and/or the scriveners of the agreement. Luciano also requested a declaration and determination of his rights to all 29 shares of the JTM stock.

By stipulation, the case was heard by the master of the 312th District Court on January 24, 1991. The parties also stipulated that the master's ruling would not be subject to trial de novo by the district court, but instead, would be subject to appeal in the court of appeals.

After a trial, the master found that: 1) the agreement incident to divorce is unambiguous; 2) at the time of the divorce, the parties owned 29 shares of JTM stock— Luciano possessed a share certificate representing 12 shares of JTM stock, Audrey possessed a share certificate representing 12 shares of JTM stock, and Texas Commerce Bank held a share certificate for five shares of JTM stock to secure payment of indebtedness incurred by the community estate; 3) the agreement awarded 24 shares of JTM stock to Luciano; 4) five shares of JTM stock were unawarded by the agreement; 5) Luciano and his attorney, Thomas Clarke, intended that Luciano would get all 29 shares of the JTM stock owned by the couple at the time of divorce; 6) it was not established by a preponderance of the evidence that Audrey also intended for Luciano to get all 29 shares of JTM stock; 7) there was no evidence that Audrey or her attorney, Hugh Echols, by their acts or acquiescence, intended that Luciano get the 29 shares of JTM stock; 8) Luciano and his attorney, Thomas Clarke, made a unilateral mistake in the agreement incident to divorce, but neither Audrey nor her attorney, Hugh Echols, participated in that unilateral mistake; 9) because Audrey and Luciano were co-owners of the five unawarded shares of JTM stock on the date of divorce, Audrey was awarded one-half of the value of the five shares, along with interest from the date of the sale of the stock; and 10) Luciano's request for reformation should be denied.

Appellant's theory of the case was that he and his former wife, after several rounds of negotiations, ultimately intended that he would get all 29 shares of the JTM stock, and in return, Audrey would receive a certain sum of alimony. Due to the hectic nature of the settlement negotiations, appellant claimed, the agreement incident to divorce mistakenly reflected he get 24 shares of JTM stock instead of 29. In points of error five through 14, and points of error 19 and 20, appellant contends the trial judge erred in excluding certain evidence of the parties' mutual mistake and actual intent.

■ To convince an appellate court to reverse a judgment based on error in the admission or exclusion of evidence, an appellant must show: 1) the trial judge's ruling was error; and 2) the error was calculated to cause and probably did cause rendition of an improper verdict. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); Tex.R.App.P. 81(b)(1).

As appellant, Luciano is not required to prove that but for the erroneous exclusion of the evidence, a different judgment *would* have resulted. *Castro v. Sebesta*, 808 S.W.2d 189, 192 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Howard v. Faberge, Inc.*, 679 S.W.2d 644, 648 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).[1] It is sufficient for him to show an improper judgment *probably* resulted. *Castro*, 808 S.W.2d at 192; *Howard*, 679 S.W.2d at 648.

---

1. In *Castro*, this Court recognized a line of cases that suggest a case should not be reversed unless the whole case turns on the particular evidence admitted or excluded. *See, e.g., Texaco, Inc.*, 729 S.W.2d at 837; *Roach v. Roach*, 735 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1987, no writ). In *Castro*, however, this Court also recognized that language conflicted with language from the supreme court in *King v. Skelly*, 452 S.W.2d 691, 696 (Tex.1970) and from this Court in *Howard*, 679 S.W.2d at 648. *Castro*, 808 S.W.2d at 192 n. 1. Because the outcome of this case remains the same under either theory, the apparent conflict need not be resolved here.

In points of error five through 14, and points of error 19 and 20, Luciano claims the excluded evidence was admissible to prove his affirmative defense of mutual mistake. That excluded evidence, contained in several bills of exception, reflects the following:

1) **point of error five:** Thomas Clarke, Luciano's lawyer during the negotiations of the property agreement, testified how the parties intended to deal with the division of any assets and liabilities omitted from the property settlement. Clarke testified that the parties agreed if one party hid property from another party, then the property was to be awarded to the non-hiding party.

2) **point of error six:** Audrey testified that she did not want the trial judge to divide the property in a trial; she was scared of how the judge would divide the property; she wanted to settle; and she would be willing to do anything she had to in order to settle.

3) **point of error seven:** The judge refused to admit Luciano's exhibits seven and eight. Exhibit eight was a copy of a proposed security agreement prepared by Luciano during the negotiations and indicating Audrey was to retain a security interest in 29 shares of JTM stock to ensure Luciano payed her alimony. Exhibit seven was a draft of the closing papers negotiated in the divorce, dated a month before the actual settlement, and signed by Audrey and Luciano. The draft proposed securing payment of Audrey's alimony with 24 shares of JTM stock. Clarke testified the agreement was changed to 24 shares because 5 shares were given to a bank as security on a loan to Luciano. With the loan, Luciano was to give Audrey a cash sum, pay off her Cadillac, and pay her divorce attorney's bill as part of the divorce agreement.

4) **point of error eight:** Tom Clarke testified as to reasons the final written document failed to specifically include all 29 shares, and emphasized especially the hectic conclusion of the settlement, which in his opinion, led to the inadvertent scrivener's error that omitted the 29 shares.

5) **point of error nine:** Tom Clarke testified about provisions in the agreement that show the parties intended for Audrey to get alimony as compensation for giving Luciano her interest in the JTM stock.

6) **point of error 10:** Hugh Echols, attorney for Audrey during the settlement negotiations, testified that his understanding at the time of settlement was that Luciano was going to get all the stock, and at the time, he thought 24 shares was all the stock.

7) **point of error 11:** Hugh Echols testified he does not remember whether or not he pointed out to Tom Clarke that number three was missing from schedule B on the list of property to be awarded to Luciano. (The schedule was attached to the final agreement and numerically lists the property to be awarded to Luciano, starting with 1 and ending with 13. Along the way to 13, however, the list omits number three. Clarke testified elsewhere that number three was supposed to be the 29 shares of JTM stock.)

8) **points of error 12, 13, and 14:** Luciano offered the deposition of Douglas Norman, the permanent master who presided at the underlying divorce. The excluded testimony shows that Norman was acquainted with the underlying controversy, and had a general recollection that Audrey was to get alimony and Luciano was to get all of the stock.

9) **point of error 19:** Luciano testified that Audrey, in the trade of alimony for her interest in the stock, got more in alimony than her stock was worth. (offered to show the alimony was intended to compensate Audrey for all her stock).

10) **point of error 20:** Luciano attempted to introduce respondent's exhibit 23, which shows the division of the property between the parties at the time of divorce. Luciano offers it in order to show that Audrey received substantial value in alimony in return for her interest in the JTM stock.

While Luciano argues this evidence is admissible to show mutual mistake and the true intent of the parties, Audrey argues the evidence is parol evidence and should not be considered because the document is unambiguous. As such, Audrey contends the trial judge did not err by excluding the evidence on these grounds. We disagree.

■ A mutual mistake of fact "occurs where the parties to an agreement have a common intention, but the written contract does not reflect the intention of the parties due to a mutual mistake." *Okon v. MBank, N.A.,* 706 S.W.2d 673, 675 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). The parol evidence rule does not bar extrinsic proof of mutual mistake. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990); *Santos v. Mid–Continent Refrigerator Co.,* 471 S.W.2d 568, 569 (Tex.1971). The parol evidence rule does not apply where it is alleged that by reason of mutual mistake an agreement does not express the real intention of the parties; in such a case, extrinsic evidence is admissible to show what the real contract is. *Alkas v. United Sav. Ass'n of Texas, Inc.,* 672 S.W.2d 852, 856 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *see also United Interests, Inc. v. Brewington, Inc.,* 729 S.W.2d 897, 903 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

■ The trial judge here repeatedly refused to allow this parol evidence because he found the agreement incident to divorce was unambiguous. When mutual mistake is alleged, however, the task of the court is not to interpret the language contained in the contract, but to determine whether or not the contract is valid. *Williams,* 789 S.W.2d at 265. The fact that the written instrument is couched in unambiguous language, or that the parties knew what words were used and were aware of their ordinary meaning, or that they were negligent in failing to discover the mistake before signing the instrument, will not preclude the admission of parol evidence or relief by reformation. *See Brinker v. Wobaco Trust Ltd.,* 610 S.W.2d 160, 164 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.). Here, Luciano offered the excluded evidence in an attempt to prove a mutual mistake occurred and to prove the true intent of the parties. *Under those circumstances, the parol evidence was admissible.*

Audrey asserts that this case is not one of mutual mistake, but instead, a case where the five shares of JTM stock are omitted property. Thus, Audrey argues, the judge properly excluded Luciano's offer of parol evidence of mutual mistake, and distributed the stock under Tex.Fam.Code Ann. § 3.91(a) (Vernon 1993).[2] We disagree. Because Luciano pled mutual mistake, the fact that five shares of stock were omitted from the final agreement did not end the inquiry as to the reason for the omission; it began it. Luciano was entitled to present evidence of mutual mistake to explain the omission. If the trial court was unpersuaded by the evidence of mutual mistake, it was *then* entitled to find the property was simply omitted property, and divide it under section 3.91. As such, the trial judge erred when he excluded the evidence based on the grounds urged by Audrey, the parol evidence rule.

■ The next question is: did the exclusion of the evidence probably result in an improper judgment? When mutual mistake is alleged, the party claiming relief must show what the parties' true agreement was and that the instrument incorrectly reflects that agreement because of a mutual mistake. *Estes v. Republic Nat'l Bank of Dallas,* 462 S.W.2d 273, 275 (Tex. 1970). Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake. *Davis v. Grammer,* 750 S.W.2d 766, 768 (Tex.1988). Here, the trial judge found that Luciano and his attorney intended for

2. Section 3.91(a) reads:
   If a final decree of divorce or annulment rendered by a Texas court failed to dispose of property subject to division under Section 3.63 of this code even though the court had jurisdiction over the spouses or over the property, the court shall divide the property in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

Luciano to possess all 29 shares of the JTM stock, but they committed a unilateral mistake. Thus, to prove mutual mistake, Luciano also had to prove either 1) Audrey or her lawyer intended for Luciano to get 29 shares; or 2) Audrey or her lawyer knew Luciano mistakenly believed the agreement gave him all 29 shares, but failed to bring the matter to Luciano's attention. The trial judge found Luciano proved neither.

■ Without considering the excluded evidence, the judge found there was *no* evidence that Audrey or her attorney intended for Luciano to get all 29 shares of the JTM stock. The excluded evidence, however, tends to show otherwise. That evidence shows Audrey and her attorney knew there were 29 shares of JTM stock; that the parties exchanged proposals that outlined Audrey was to receive alimony in return for giving Luciano all her interest in the JTM stock; that Audrey wanted to settle the case and would do anything to avoid trial; that, at the time of settlement, Audrey's attorney thought the agreement gave Luciano all the stock, but thought "all" the stock was 24 shares; that in the hectic rush at the courthouse to settle and avoid trial, the parties left number three off the schedule of property to be awarded to Luciano (and admitted testimony showed number three was the 29 shares of JTM stock Luciano was to receive in return for alimony payments); that the amount of alimony given Audrey more than compensated her for all her interest in JTM stock; and that the master from the divorce hearing had a general recollection that the parties intended Audrey to get alimony in exchange for giving Luciano all the JTM stock.

Some of the excluded evidence, standing alone, might not prove appellant's affirmative defense. The cumulative effect, however, of the repeated and improper exclusions prevented appellant from proving his case. In sum, there is excluded evidence that, if believed, tends to prove Audrey and/or her attorney intended for Luciano to get all 29 shares of the JTM stock. The improper exclusion of that evidence probably caused the rendition of an improper judgment. Thus, the exclusion was harmful. TEX.R.APP.P. 81(b)(1).

We sustain points of error five through 14, and points of error 19 and 20.

Due to the disposition of these points of error, this Court need not reach the merits of points of error one through four, 15 through 18, and 22 through 26.

In a cross-point of error, Audrey contends the trial judge erred in failing to award her the entire value of five shares of JTM stock. Because of our disposition of earlier points, we overrule Audrey's cross-point.

We reverse the judgment and remand the cause to the trial court.