**Affirmed in part, Reversed and Rendered in part, and Memorandum Opinion filed July 9, 2019.**



In the

# Fourteenth Court of Appeals

## NO. 14-18-00132-CV

**CHARLES WATSON, Appellant**

**v.**

**TIFFANIE L. PURVIS AND AMAD AL-BANNA, Appellees**

**TIFFANIE L. PURVIS, Appellant**

**v.**

**CHARLES WATSON, Appellee**

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-28746**

## MEMORANDUM OPINION

The crux of these two consolidated appeals concerns the breach of a rule 11 settlement agreement recorded in open court. *See* Tex. R. Civ. P. 11. The trial court

granted traditional summary judgment in favor of Charles Watson and against Tiffanie L. Purvis.

In her appeal, Purvis argues that the trial court erred by granting Watson's motion for summary judgment because fact issues exist regarding enforceability of the settlement agreement and Purvis's affirmative defenses. Purvis further contends that the trial court erred in its awards against her for actual damages, pre-judgment interest, and costs, and by failing to compel Watson's payment of attorney's fees previously awarded to Purvis under rule 91a. *See* Tex. R. Civ. P. 91a. In his appeal against Purvis, Watson challenges the trial court's decisions to deny his motion for leave to amend his petition and to grant Purvis's motion to exclude evidence regarding Watson's attorney's fees. We sustain Purvis's issues relating to actual damages and pre-judgment interest, and otherwise overrule her issues. We overrule Watson's issues against Purvis.

Watson also brings an appeal against appellee Amad Al-Banna. Watson challenges the trial court's granting of no-evidence summary judgment in favor of Al-Banna. Watson also argues that counsel for Al-Banna violated rule 199.5(d–h) during Al-Banna's deposition. *See* Tex. R. Civ. P. 199.5(d–h). We overrule Watson's issues against Al-Banna.

Accordingly, we reverse the portions of the trial court's judgment awarding principal damages and pre-judgment interest. We render judgment that Watson recover from Purvis "Principal Damages owed under the Recorded Settlement Agreement of $12,500.00" and "Pre-judgment Interest at the rate of 5% for each of the first two missed payments of $2,500.00, calculated from the date of suit filing (August 23, 2017) until the day before judgment (February 1, 2018), and for each of the three remaining missed payments of $2,500.00, respectively calculated from the date of each missed payment (September 15, October 15, and November 15, 2017)

until February 1, 2018, which is equivalent to $222.64." We otherwise affirm the trial court's judgment as challenged.

## I.  BACKGROUND

This case has a storied background. We discuss only what is pertinent on appeal.

Watson and Purvis engaged in a romantic and real-estate business relationship that ultimately soured. In May 2015, Watson brought claims against Purvis and her company Tiffanie Purvis, Inc. (TP, Inc.) d/b/a Texas Real Estate & Co. for fraud, breach of fiduciary duty, conversion, misappropriation, and conspiracy. Purvis brought counterclaims against Watson for breach of fiduciary duty, quantum meruit, unjust enrichment, and intentional infliction of emotional distress. Watson also brought claims against other entities and individuals, including Al-Banna, for misappropriation based on conspiracy liability. Watson alleged that Al-Banna participated in a conspiracy to use Watson's name in certain real-estate transactions without his permission. The trial court granted various defendants' motions for summary judgment,[1] including a no-evidence motion filed by Al-Banna.

On May 30, 2017, as trial was set to begin, Watson and Purvis entered into a settlement agreement on the record. Purvis was to pay Watson "a sum of $90,000 at $2,500 each and every month until paid in full" and return any of Watson's personal property "on Mr. Watson's list" from two Houston properties "that is contained in the storage facility." The parties agreed there would "be general mutual releases of all claims arising out of any facts, known or unknown, matured or unmatured." The

---

[1] We recently affirmed one of these summary judgments, which the trial court had severed. *See Watson v. Talia Heights, LLC*, 566 S.W.3d 326, 328, 331 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding that no-evidence summary judgment on Watson's claim for misappropriation based on conspiracy was proper).

parties also agreed to later "in good faith" address "an ongoing dispute with respect to Waller [County] in terms of some of that personal property."

Counsel appearing for Watson stated: "On that representation, I believe we have a settlement." Counsel appearing for Purvis and TP, Inc. stated: "Obviously, subject to final paperwork and everything. Even though this would be an enforceable agreement on the record, there may be additional provisions that we want in there." The trial court stated: "Okay. And for our purposes now, we're going to move the case to hold for judgment status." Counsel for Watson further stated: "Only the parties before you are released, however. I just want to make sure that that's clear. No party not represented by any of these parties is part of this settlement." Counsel for Purvis interjected that he wanted to "address" parties Wanda Reyna and Debra Zecchin, whom he also represented, to make sure that they were "released as part of this settlement." Counsel for Purvis further stated: "Well, when I—when I—we had talked about it being a global settlement. That was the intent of that. You know, obviously, they're not appearing because they've been dismissed on summary judgment." Counsel for Watson replied: "Mr. Watson's not going to be silly about this. I mean, Reyna and Zecchin are fine." Counsel for Purvis responded: "Okay." Counsel for Watson later stated: "Okay. Then we have an understanding." Counsel for Purvis replied: "Okay."

A few weeks later, counsel for Purvis emailed counsel for Watson: "As we discussed, I am still waiting for client approval on the settlement document . . . [b]ut this email confirms that the first $2,500 payment will be made on or before July 15, 2017, and the personal property that is being released pursuant to the settlement will be tendered by that same date." Purvis, however, did not provide any payment or release Watson's personal property. Instead, Purvis filed a motion for trial setting.

The trial court granted Purvis's motion for trial setting and granted Watson

4

leave to file a fourth amended petition. Trial was set for January 15, 2018. Watson filed his fourth amended petition against Purvis for breach of contract. Watson then filed a fifth amended petition against Purvis, TP, Inc., Reyna, and Zecchin[2] for breach of contract and declaratory judgment. Watson filed a traditional motion for summary judgment against Purvis. Purvis filed a response.

On November 16, 2017, Watson filed a motion for leave to file a sixth amended petition to assert fraud claims against counsel for Purvis and his law firm. In his proposed sixth amended petition, Watson sought to add Purvis's trial counsel and his law firm as defendants and bring fraud claims against them in connection with the recorded settlement agreement. The trial court signed an interlocutory order granting Watson's traditional motion for summary judgment against Purvis on December 6, 2017.

On the morning of what was to be an evidentiary hearing on Watson's attorney's fees, Purvis filed a motion to exclude evidence regarding attorney's fees. The trial court sustained Purvis's objection at the hearing. The trial court signed its final judgment and an order denying Watson leave to file his sixth amended petition on February 2, 2018. Watson and Purvis timely appealed. Watson filed his appeal against Purvis and Al-Banna; Purvis filed her appeal against Watson.

## II.  ANALYSIS

### A. Purvis's appeal

#### 1.  The rule 11 settlement agreement is binding and enforceable.

In her first issue, Purvis argues the trial court erred in concluding that the transcript was a binding and enforceable rule 11 settlement agreement. Purvis contends that the parties did not agree on the essential terms of the purported contract

---

[2] TP, Inc., Reyna, and Zecchin are not parties on appeal.

and the transcript "is missing global release language and other material terms." Purvis also argues there is a fact issue regarding whether the parties' respective LLCs were intended to be part of the global settlement. Viewed as a whole, we conclude that the transcribed agreement is binding and enforceable.

Texas Rule of Civil Procedure 11 provides: "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex. R. Civ. P. 11. Purvis does not dispute that the purported settlement was made in open court and entered of record.

A rule 11 settlement agreement must contain all the essential terms of the settlement. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Essential terms of a rule 11 settlement agreement include payment terms and release of claims. *See id.* at 460–61. We construe rule 11 settlement agreements as we do any other contract. *MKM Eng'rs, Inc. v. Guzder*, 476 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Here, the plain language of the transcript reflects that Purvis would pay Watson $90,000 in monthly payments of $2,500 and return certain of Watson's personal property; that Purvis and Watson would enter general mutual releases of all claims arising out of any facts, known or unknown, matured or unmatured; and that Purvis and Watson would work in good faith to address the remaining claims pertaining to personal property in Waller County. The settlement therefore included the essential terms of payment and release of claims. *See Padilla*, 907 S.W.2d at 460–61; *MKM Eng'rs*, 476 S.W.3d at 778, 782.

According to Purvis, however, certain language in the transcript confirms that essential terms were missing. First, Purvis points to the statement that "[t]here *will be* general mutual releases" and argues this "brief recitation" does not "comprise[]"

such a release." We rejected a similar argument in *MKM Engineers*. *See* 476 S.W.3d at 781–82 (rejecting argument that rule 11 settlement agreement was missing essential and material term because it "provide[d] only that full releases 'will' be provided in the future"). Moreover, the transcript contains clear language that the parties before the trial court "are released" as "part of this settlement" and that Reyna and Zecchin "are fine" and thus "released as part of this settlement."

Purvis next points to this language: "Obviously, *subject to final paperwork* and everything. Even though this would be an enforceable agreement on the record, *there may be additional provisions that we want in there*." According to Purvis, "[t]he foregoing acknowledges that the payment amount and few other terms on the record are binding, but that the parties necessarily would need further work to negotiate and fully document the balance of the terms." Purvis also argues that additional "good faith" efforts would be required for the parties to address the Waller County litigation. Purvis's position, however, is based on an incorrect premise—parties need not agree to *all* terms of a settlement agreement and memorialize them in a formal writing before there can be an enforceable agreement. *See id.* at 778; *Robinson v. Cason*, No. 01-11-00916-CV, 2013 WL 3354651, at *7 (Tex. App.—Houston [1st Dist.] July 2, 2013, no pet.) (mem. op.). Here, the language that "this would be an enforceable agreement on the record"; multiple references to the "settlement"; and the statement they had "an understanding" reflect that the parties intended their agreement to be a present, binding agreement. That Watson and Purvis would reduce their agreement to "final paperwork" and left "additional provisions" to be (possibly) negotiated and agreed later does not render the transcribed agreement unenforceable. *See MKM Eng'rs*, 476 S.W.3d at 779, 781–82 (no fact issue raised on enforceability even though "the parties contemplated taking additional actions and executing a final settlement agreement at a later date" and

7

when "other non-essential or collateral matters [were] left for future negotiation").

Purvis also contends that the intent of the parties' "global settlement" was to reach the broader scope of the parties' business dealings within a final comprehensive written settlement agreement. However, the plain language of the transcript indicates that the "global" nature of the settlement referred to its inclusion of Reyna and Zecchin. We also do not agree with Purvis that counsel for Watson's statement that Watson was "not going to be silly about this" referred to "the context of crafting the full scope of the release" rather than the context of including Reyna and Zecchin as parties to the settlement.

Although Purvis does not assert that the language in the transcript is ambiguous, she argues—primarily based on Watson's testimony concerning his ties to Purvis's various businesses—there is a fact issue on whether the parties intended to include their respective LLCs to be part of the "global settlement." However, intent that is clear and unambiguous on the face of the agreement may be determined as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Nothing in the transcript indicates that the settlement agreement was intended to reach any further than the parties at hand (plus Reyna and Zecchin) and all their claims. Nor does anything in the transcript indicate the parties intended that their settlement agreement not be enforceable until their "respective LLCs" were addressed. We therefore must reject Purvis's attempt to alter the parties' expression of their intent. *See 1st Res. Grp., Inc. v. Olukoga*, No. 02-16-00136-CV, 2017 WL 218290, at *3 (Tex. App.—Fort Worth Jan. 19, 2017, no pet.) (mem. op.) (appellant's evidence contrary to expression of parties' intent in settlement was not admissible); *MKM Eng'rs*, 476 S.W.3d at 781 (same).

Finally, according to Purvis, the fact that other terms were included in the draft settlement agreement and mutual release Purvis sent to Watson in the weeks

following the transcribed agreement demonstrates these terms were material. We disagree. That additional, non-essential terms which may have been important to Purvis, such as the release of the parties' businesses, were included but not resolved in the draft settlement and release does not raise a fact issue concerning the enforceability of the previously dictated terms. *See MKM Eng'rs*, 476 S.W.3d at 782; *Robinson*, 2013 WL 3354651, at *7. Moreover, "consistent with an understanding that a binding agreement had been reached," while he was still drafting the final settlement document, counsel for Purvis confirmed by email to counsel for Watson that Purvis planned to make her first $2,500 payment and tender Watson's personal property by July 15, 2017. *See MKM Eng'rs*, 476 S.W.3d at 782.

### 2. Purvis failed to raise a fact issue on her defenses.

Purvis argues that even if the transcribed agreement is valid and enforceable, she raised sufficient fact issues to preclude summary judgment regarding her affirmative defenses of condition precedent, unilateral mistake, and mutual mistake. We disagree.

*Condition precedent.* Purvis first contends that she was not obligated to pay and complete the settlement with Watson because Watson failed to fulfill a necessary condition precedent. *See Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) ("Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty."). Purvis does not explain what language in the transcribed agreement conditions Purvis's obligation to pay Watson on Watson's negotiation and signing of a global, written settlement. Nor have we located any such language. Instead, our plain reading of the transcript establishes: (1) that Purvis promised to pay Watson $90,000 in installments, return his property, and release all her claims and (2) that

9

Watson promised to release all his claims. These are covenants, not conditions precedent. *See Azad v. MRCO, Inc.*, No. 14-12-00165-CV, 2013 WL 6700285, at *7 (Tex. App.—Houston [14th Dist.] Nov. 7, 2013, pet. denied) (subs. mem. op) (conditions precedent are to be avoided when possible); *McMahan v. Greenwood*, 108 S.W.3d 467, 484–85 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g).

Next, Purvis argues that she was mistaken or both parties mutually were mistaken regarding the scope and intent of the settlement agreement.

*Unilateral mistake.* To avoid summary judgment, Purvis needed to raise a genuine fact issue on each of the elements of unilateral mistake: (1) the mistake is of so great a consequence that to enforce the contract would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i.e., rescission must not result in prejudice to the other party except for the loss of his bargain. *See James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (Tex. 1960). Purvis has not provided, and we have not located, any authority in which enforcing a similar "mistake" (that a settlement included a general release of all claims against the parties to the case and not an additional "global" release of all claims against all business interests of the parties) was found to be unconscionable. In addition, we already have concluded that Watson's signing of a written global settlement which would release all the parties' respective LLCs was not a material term of the agreement.

*Mutual mistake.* To avoid summary judgment, Purvis needed to raise a genuine fact issue on each element of mutual mistake: (1) a mistake of fact, (2) held mutually by the parties, (3) which materially affects the agreed-upon exchange. *See*

10

*Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). "To prove a mutual mistake, however, the evidence must show that both parties were acting under the same misunderstanding of the same material fact." *Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). We do not determine mutual mistake based on self-serving statements of the parties' intent, but rather solely on the objective circumstances surrounding the execution of the contract. *See Williams*, 789 S.W.2d at 264. Only under "narrow circumstances" will a party be able to raise a fact issue to set aside a contract based on mutual mistake. *See id.* at 265.

Again, we already have concluded that a written global release of all the parties' businesses was not a material term. Moreover, the objective facts here do not fit the narrow circumstances recognized in *Williams*. Williams involved an individual who executed a full settlement release immediately after an automobile accident and later discovered she had sustained head and neck injuries, which neither party knew at the time of the release. *See id.* at 264. Here, both parties were represented by counsel and discussed the parties' releases in their settlement negotiations. In a phone call, Watson offered "a 'global settlement,' including mutual releases." In an email, Watson offered "[m]utual release and dismissal of the Harris county 270[th] and Waller County 506[th][]litigation with prejudice." Counsel for Purvis stated on the record that the "intent" of the "global settlement" about which the parties "had talked" was to include the release of Reyna and Zecchin. Viewed in the light most favorable to Purvis, she has not shown any mutually held misunderstanding of the same fact.

Purvis cites *Volpe v. Schlobohm*, 614 S.W.2d 615 (Tex. Civ. App.—Texarkana 1981, no writ), arguing that because she and Watson "were working under different conceptions as to the same matter," this amounted to a mutual

11

mistake because there was no meeting of the minds. However, the *Volpe* court recognized that "[o]f course, this type of mistake will justify relief only if the expression or writing evidencing the purported agreement is uncertain and ambiguous, for if there is no ambiguity with respect to the written or oral expression of the terms neither party will be heard to say that, by his subjective intent, he meant something different from what was actually expressed." *Id.* at 618. The transcribed agreement is not ambiguous.

Purvis also contends that her unilateral mistake, when Watson had knowledge of that mistake, is equivalent to mutual mistake. *See Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988). Even assuming for the sake of argument there was any unilateral mistake by Purvis, nothing in the record reveals that Watson knew Purvis mistakenly believed the transcribed settlement included a release of claims for all the parties' business interests. *See Atl. Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 213 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh'g) (no fact issue raised when record did not support unilateral mistake by plaintiffs as to terms of settlement agreement of which defendants were aware). Also, we find *Marcuz v. Marcuz*, 857 S.W.2d 623 (Tex. App.—Houston [1st Dist.] 1993, no writ), cited by Purvis, distinguishable. *Marcuz* involved a property settlement agreement in a divorce proceeding. There, the evidence showed the wife and her counsel intended that the husband receive all shares of a certain stock in return for alimony payments, but the agreement mistakenly omitted five shares of stock. *Id.* at 628. Unlike in *Marcuz*, Purvis was not attempting to show mutual mistake based on circumstances in which Watson or his counsel intended for the settlement release to reach all the parties' business interests. *Cf. id.*

We overrule Purvis's first issue.

### 3. Watson did not conclusively establish $90,000 in damages.

12

In her second issue, Purvis argues that the trial court erred in awarding Watson damages consisting of an immediate payment of $90,000—comprising all 36 installment payments—when most of those payments were not yet due.[3] We agree.

Where the terms call for periodic payments during the course of an agreement, a cause of action for such payments may arise at the end of each installment period. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 68 (Tex. 2015). An obligee is entitled to maintain his action for and receive damages all at one time for the entire breach only when a party obligated to make future installment payments absolutely repudiates the obligation without just excuse. *Taylor Publ'g Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). Repudiation or anticipatory breach is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *9 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.).

Watson does not dispute that the settlement agreement is an installment contract. In his traditional motion for summary judgment, however, Watson did not allege, much less attempt to prove, that Purvis absolutely repudiated or committed an anticipatory breach of all the monthly installments of $2,500 totaling $90,000 under the settlement agreement. *See id.* (elements of repudiation or anticipatory breach are: (1) defendant repudiated obligation, (2) without just excuse, and (3) plaintiff was damaged from breach). Watson did not prove there was no genuine issue of material fact such that he was entitled as a matter of law to contract damages of the entire $90,000. *See* Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993) (motion for traditional summary

---

[3] Purvis raised this objection in her partial motion to reconsider the order granting summary judgment and in her response to Watson's motion for entry of final judgment.

judgment must stand or fall on its own merits). Therefore, the trial court erred by awarding Watson principal damages of $90,000.

Given that each monthly installment was to be $2,500, when the evidence showed that Purvis's initial monthly payment was to be paid on July 15, 2017, and that she had missed five monthly payments at the time of summary judgment, Watson was entitled to damages of $12,500.

We sustain Purvis's second issue.[4]

### 4. The trial court erred in its award of pre-judgment interest.

In her related third issue, Purvis argues the trial court erred by awarding Watson $1,997.26 in pre-judgment interest because that amount includes interest on damages Watson had not sustained at the time of the judgment.[5] We agree.

The purpose of pre-judgment interest is to fully compensate the injured party when such interest represents additional damages for lost use of the money due as damages. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006). In the context of an installment contract, we have calculated pre-judgment interest based on the date suit was filed for any breach as of that date, and based on the individual accrual date for any additional post-suit breach. *See Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 453 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

As indicated above, at the time of summary judgment, Purvis had missed five installment payments. Each of Purvis's first two $2,500 payments began to accrue

---

[4] We therefore do not reach Purvis's alternative argument under this issue that the damages award did not account for the discounted present value of future installment payments. *See* Tex. R. App. P. 47.1.

[5] Purvis raised this objection in her response to Watson's renewed motion for entry of final judgment.

pre-judgment interest on the date suit was filed, August 23, 2017. The other three $2,500 payments did not start accruing pre-judgment interest until the dates those payments were missed, September 15, October 15, and November 15, 2017, respectively. *See id.* Therefore, the trial court erred by awarding Watson pre-judgment interest of $1,997.26 based on total principal damages of $90,000 and a single accrual date of August 23, 2017.

We sustain Purvis's third issue.

### 5. The trial court did not abuse its discretion in its award of taxable costs.

In her fourth issue, Purvis argues that the trial court abused its discretion when it signed a post-judgment order on March 27, 2018, setting a security amount that included taxable costs incurred prior to the date of the settlement. Purvis does not dispute that Watson was successful on his breach-of-contract claim, but asserts that was his only success after he abandoned his other claims. Watson responds that rule 131 allows for an award to him as the successful party of "all costs incurred therein, except where otherwise provided." *See* Tex. R. Civ. P. 131.

The allocation of costs in the judgment cannot be overturned on appeal unless the trial court abused its discretion. *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 937 S.W.2d 60, 86 (Tex. App.—Houston [14th Dist.] 1996, no writ), *aff'd as modified*, 975 S.W.2d 546 (Tex. 1998). A "successful party" is "one who obtains judgment of a competent court vindicating a civil right or claim." *City of Houston v. Woods*, 138 S.W.3d 574, 581 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "When determining whether court costs are appropriate, a court should consider the judgment rather than the verdict." *May v. Ticor Title Ins.*, 422 S.W.3d 93, 102 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Here, the judgment is rendered only against Purvis, and Watson is the only successful party. Purvis does not cite, and we have not located, any authority requiring the trial court to make any

"proportionate reduction" in Watson's costs based on the degree of his success. *See Operation Rescue-Nat'l*, 937 S.W.2d at 87. Purvis has not shown that the trial court abused its discretion by not agreeing to reduce court costs when it set the security amount.

We therefore overrule Purvis's fourth issue.

### 6. We do not consider Purvis's fifth issue.

In her fifth issue, Purvis contends that the trial court erred when it failed to compel payment of attorney's fees previously awarded to her pursuant to Texas Rule of Civil Procedure 91a. We have not located where in the record Purvis alerted the trial court to its failure to rule on her motion to compel payment of the fees awarded in the prior fee order. Nor did Purvis request that the trial court offset, or object to the trial court's failure to account for, such award in its final judgment. Purvis did not preserve her fifth issue. *See* Tex. R. App. P. 33.1(a).

## B. Watson's appeal against Purvis

### 1. The trial court did not abuse its discretion in denying leave to amend.

In his first issue, Watson argues that the trial court abused its discretion by denying his motion for leave to file a sixth amended petition, in which he sought to add fraud claims against counsel for Purvis and his law firm as new defendants. Watson maintains there was no showing that his amended petition would operate as a surprise under Texas Rule of Civil Procedure 63; his petition stated a prima facie case for fraud; attorney immunity and the Texas Citizens Participation Act did not vitiate his petition *ab initio*; and because the trial court's order did not set forth a basis for denying Watson leave, it can only be viewed as having been made without reference to guiding rules or principles.

It is Texas Rule of Civil Procedure 37, however, that provides for the inclusion

of additional parties in a suit by either plaintiff or defendant, with the limitation that such additions may not be made "at a time nor in a manner to unreasonably delay the trial of the case." Tex. R. Civ. P. 37. Trial courts have great discretion in matters of party joinder, we review the record in the light most favorable to the trial court's decision, and we will not disturb the ruling as long as any authority supports it. *Varme v. Gordon*, 881 S.W.2d 877, 882 (Tex. App.—Houston [14th Dist.] 1994, writ denied). We review the record in the light most favorable to the trial court's action. *Id.* We are not aware of, and Watson does not point to, any authority that compels us to find an abuse of discretion simply because a trial court does not expressly state the basis for its ruling in its order. Based on the circumstances, we conclude that the trial court did not abuse its discretion by refusing to permit the joinder of counsel for Purvis and his firm as new defendants approximately two weeks before the summary-judgment hearing and less than two months before trial was set. *See* Tex. R. Civ. P. 37; *Varme*, 881 S.W.2d at 883 ("This discretion includes the power to make a determination that a party's joinder will delay a trial whose date has already been set.").

We overrule Watson's first issue against Purvis.

### 2. Nor did the trial court abuse its discretion in excluding attorney's-fee evidence.

Watson next challenges the trial court's decision to refuse to admit evidence he proffered in support of his chapter-38 attorney's fees. Watson points to the trial court's statement in its interlocutory summary-judgment order that the court would hold a later evidentiary hearing on his attorney's fees. Watson contends that the trial court can take judicial notice of usual and customary attorney's fees, which are presumptively reasonable, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.003, 38.004, without requiring expert testimony. Watson also argues that the trial court abused its

17

discretion by basing its ruling on a limine order from May 30, 2017.

Although Watson in his summary-judgment motion stated that he would provide the trial court with evidence of his attorney's fees by separate motion, he did not. *See Universal MRI & Diagnostics, Inc. v. Med. Lien Mgmt. Inc.*, 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (attorney's fees may be awarded on summary judgment only when evidence is conclusive). Watson does not provide, and we have not located, any authority requiring a trial court to admit evidence of attorney's fees simply because it stated it would hold an evidentiary hearing on attorney's fees.

At the hearing, Watson did not make an offer of proof regarding his attorney's fees. Watson also did not request that the trial court take judicial notice of the usual and customary fees or the contents of the case file. Even if he had, a trial court is not required to take judicial notice regarding attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.004 (court "may" take judicial notice).

Finally, we do not agree that the trial court based its decision on the May 30 limine order. Instead, the trial court asked counsel for Watson whether "subsequent to that" he made a designation on attorney's fees or supplemented any previous designation, and counsel answered he had not. *See* Tex. R. Civ. P. 193.5, 193.6, 194.2. Under these circumstances, we cannot conclude that the trial court abused its broad discretion in granting Purvis's motion to exclude. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Ainsworth v. CACH, LLC*, No. 14-11-00502-CV, 2012 WL 1205525, at *8 (Tex. App.—Houston [14th Dist.] Apr. 10, 2012, pet. denied) (mem. op.) (reviewing evidentiary ruling under chapter 38 for abuse of discretion).

We overrule Watson's second issue against Purvis.

## C. Watson's appeal against Al-Banna

### 1. The trial court properly granted no-evidence summary judgment.

In his first two issues against Al-Banna, Watson argues that he adduced sufficient evidence to support the contested elements of—and avoid no-evidence summary judgment on—his misappropriation claim against Al-Banna based on conspiracy liability.

In his no-evidence motion, Al-Banna stated the three elements of a misappropriation-of-name claim and argued that Watson could not produce evidence to raise a fact issue on the first and third elements. *See Talia Heights*, 566 S.W.3d at 329 (three elements of misappropriation claim are: (1) defendant appropriated plaintiff's name or likeness for value associated with it, and not in incidental manner or for newsworthy purpose; (2) plaintiff can be identified from publication; and (3) there was some advantage or benefit to defendant).

Watson's arguments and evidence focus on proving the benefits conferred on Al-Banna from the real estate transactions at issue, i.e., the third element of misappropriation. But neither in his response nor on appeal does Watson point to evidence showing that these benefits derived from Al-Banna's appropriation of the value associated with Watson's name instead of from the transactions themselves. *See id.* at 330. Al-Banna's no-evidence summary-judgment motion required Watson to produce evidence showing that his name was appropriated to take advantage of his reputation, prestige, or other values. *See id.* at 331. To the contrary, Watson argues that "Al-Banna and his co-conspirators relied on the fact that Watson was anonymous in the real estate investing game." *See id.* But "this argument does not show that [Al-Banna's] alleged misuse of Watson's name had 'anything to do with Watson's unique skills or reputation'—it instead suggests that Watson's name was interchangeable with that of any other 'anonymous' individual." *Id.* Considering the

evidence in the light most favorable to Watson, we conclude that the trial court did not err in granting no-evidence summary judgment on Watson's misappropriation claim against Al-Banna.

Because we conclude that Al-Banna was entitled to summary judgment on Watson's misappropriation claim, Al-Banna also was entitled to summary judgment on Watson's derivative conspiracy claim. *See id.* ("If summary judgment is granted as to the underlying tort, summary judgment also must be granted with respect to the derivative conspiracy claim.").

We overrule Watson's first two issues against Al-Banna.

## 2. Watson failed to show error based on counsel for Al-Banna's deposition behavior.

In his third issue against Al-Banna, Watson argues that counsel for Al-Banna behaved impermissibly during Al-Banna's deposition and violated Texas Rule of Civil Procedure 199.5(d–h). *See* Tex. R. Civ. P. 199.5 ("Examination, Objection, and Conduct During Oral Depositions"). Watson points to various places during Al-Banna's deposition in which counsel for Al-Banna instructed Al-Banna not to answer a question. Watson requests that this court "give him the benefit of a negative inference from Al-Banna's and [his counsel]'s untoward deposition behavior, and adjudicate this appeal with the presumption that . . . appropriate answers to deposition questions would have provided yet more evidence in support of Al-Banna's involvement in the conspiracy and scheme to misappropriate Watson's name for commercial gain."

The record does not reflect that Watson requested that counsel for Al-Banna explain the grounds for any of his instructions not to answer, *see id.* 199.5(f), or requested a hearing regarding any instruction, *see id.* 199.6. Nor does Watson cite, and we have not located, any authority providing for a negative inference on appeal

20

based on a rule-199.5 violation. In any event, we already have concluded that Watson failed to raise a fact issue that Al-Banna appropriated Watson's name based on its value, and none of these questions was calculated to adduce evidence to support that element.

We overrule Watson's third issue against Al-Banna.

### III. CONCLUSION

Accordingly, we reverse the portions of the trial court's judgment awarding principal damages and pre-judgment interest; render judgment that Watson have and recover from Purvis "Principal Damages owed under the Recorded Settlement Agreement of $12,500.00" and "Pre-judgment Interest at the rate of 5% for each of the first two missed payments of $2,500.00, calculated from the date of suit filing (August 23, 2017) until the day before judgment (February 1, 2018), and for each of the three remaining missed payments of $2,500.00, respectively calculated from the date of each missed payment (September 15, October 15, and November 15, 2017) until February 1, 2018, which is equivalent to $222.64"; and affirm the remainder of the judgment as challenged on appeal.

/s/　　Charles A. Spain
　　　　Justice

Panel consists of Justices Wise, Zimmerer, and Spain.

21